[No. 46994–6. En Banc. May 21, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. TERRY
LEE CLABORN, *Petitioner.*

*Lewis H. Nomura* of *Seattle–King County Public Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Jose E. Gaitan, J. Robin Hunt,* and *Alan Paja, Deputies,* for respondent.

STAFFORD, J.—This case comes before us on a petition to review appellant (petitioner in this court) Terry Claborn's conviction for first degree assault, burglary and theft, the latter two being enhanced by special jury findings of having been committed while armed with a deadly weapon which was a firearm. We affirm the Court of Appeals.

Appellant Claborn, Robert Alford and Donny Milsap purchased a .22 caliber rifle and a shotgun on the afternoon of July 26, 1978. That evening the three drove to Iddings Farm Service. Appellant was armed with a .357 magnum pistol, Milsap had the loaded .22 rifle and Alford carried a crowbar. Milsap stood guard as Alford broke into the tool shop with the crowbar, and Alford and appellant loaded tools into an old truck owned by Iddings Farm Service. Thereafter, Milsap returned the rifle to Alford. Appellant drove the truck with Alford as a passenger and Milsap followed in their automobile.

Officer Gordon, on routine patrol, observed the truck fol-

lowed closely by a car. The truck had no taillights. Gordon turned his police car around, overtook the vehicles, pulled around the car and turned on his blue lights. The truck immediately accelerated so Gordon turned on his siren and began pursuit.

Appellant drove the truck in an evasive manner while Alford stuck his upper body out of the window and began firing at Officer Gordon with the .22 caliber rifle. Thereafter, he continued firing with appellant's .357 magnum. The chase ended when the truck failed to negotiate a turn and crashed into a wooded area. Appellant was arrested nearby after being tracked by dogs to his hiding place. Alford escaped and was arrested several weeks later in California.

Appellant and Alford were charged identically. Count 1 alleged first degree assault, *i.e.,* assault with intent to kill Officer Gordon while committing a felony "to–wit: theft, upon the person or property of Jim R. Iddings . . ."; count 2 charged second degree burglary; and count 3 charged first degree theft. Counts 2 and 3 contained special allegations that appellant and Alford were armed with a deadly weapon which was a firearm.

At the close of the State's case appellant moved against count 1 claiming insufficient evidence to prove the necessary allied felony to establish first degree assault. The State was permitted to amend the felony charged in count 1 from theft to "possession of stolen property in the first degree".

The jury found both appellant and Alford guilty on all three counts and also found appellant was armed with a deadly weapon and a firearm on the burglary and theft counts. Alford was found to be armed during the theft but not the burglary. The trial court imposed concurrent sentences on each.

The Court of Appeals affirmed the trial court on all three counts as to appellant and Alford. Appellant alone filed a petition for review in this court. Thus, only the issues raised by him are before us. Finding no prejudicial error, we affirm the Court of Appeals.

Appellant argues the jury instructions pertaining to the

use of a deadly weapon and the use of a firearm were erroneous in that they did not specifically provide that the State had the burden of proving the special allegations "beyond a reasonable doubt." He asserts he is entitled to raise the issue for the first time on appeal because it involves a constitutional error of fundamental proportions. *See State v. Green,* 94 Wn.2d 216, 231, 616 P.2d 628 (1980); *State v. McHenry,* 88 Wn.2d 211, 558 P.2d 188 (1977).

In *State v. Tongate,* 93 Wn.2d 751, 613 P.2d 121 (1980), this court held that general instructions on presumptions of innocence and the State's burden of proving an underlying offense beyond a reasonable doubt are insufficient for a deadly weapon special verdict, under RCW 9.95.040, where the fact to be determined is not an element of the crime charged. The same apparent error is said to have occurred here, although in addition to the deadly weapon allegation there was also a firearm allegation under RCW 9.41.025.

We need not reach the asserted constitutional issue, however, and thus decline to do so. A reviewing court should not pass on constitutional matters unless absolutely necessary to the determination of the case.[1] *Ohnstad v. Tacoma,* 64 Wn.2d 904, 907, 395 P.2d 97 (1964); *accord, Bresolin v. Morris,* 86 Wn.2d 241, 250, 543 P.2d 325 (1975). We hold only that even if there was instructional error, it was, under the facts of this case, harmless beyond a reasonable doubt and thus was not reversible error. *See State v. Burri,* 87 Wn.2d 175, 182, 550 P.2d 507 (1976); *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967).

While RCW 9.95.040 requires the presence of a deadly weapon *in fact* in order for the sentence enhancement provisions to operate, *State v. Tongate, supra,* and the same would appear to be true of a firearm under RCW 9.41.025, there is absolutely no question of their use in the instant

---

[1]This is especially true when parties do not brief the issue. This case was deferred pending *State v. Tongate,* 93 Wn.2d 751, 613 P.2d 121 (1980), yet no supplemental briefs were filed.

case. The only evidence in the record reveals appellant was armed with a real .357 magnum pistol during the theft and burglary. He was seen by an eyewitness to be armed during the burglary and theft. Officer Gordon testified to having been shot at from the truck by a large caliber handgun. After the chase and arrest the .357 magnum pistol was recovered from the truck as were three spent .357 magnum shell casings, a small ammunition case containing six live .357 magnum rounds (with Claborn's latent thumbprint on the inside of the case) and a spent .22 caliber bullet lodged in a toolbox located on the truck bed. Further, appellant, at the time of arrest, conceded his passenger had fired the .357 magnum pistol at Officer Gordon. There is absolutely no evidence to the contrary, and this was never a contested issue at trial.

With these facts before us, we have no hesitancy in holding the jury could have reached no result other than that the crimes charged herein occurred while appellant was armed with a deadly weapon and a firearm. Thus, the alleged constitutional error, if any, was harmless beyond a reasonable doubt.

Even if the jury were to have believed it was Alford who possessed the .357 magnum pistol during the theft, burglary and subsequent chase, it would in this case avail appellant nothing. The trial court gave the jury "accomplice" instructions and an allied instruction that if a defendant commits a crime while armed with a deadly weapon which is a firearm, and a codefendant is legally accountable for the armed defendant's actions, both defendants are deemed armed with a deadly weapon which is a firearm. The jury was also informed that this is true even though a codefendant might never have had actual possession of the weapon. Appellant did not claim it was error to instruct on the subject of "accomplice" and did not challenge the allied instruction. Thus, they become the law of the case. *State v. Robinson*, 92 Wn.2d 357, 359, 597 P.2d 892 (1979). Under the instructions appellant's sentence could have been enhanced even if he had not touched a

weapon.

Next, appellant contends the trial court committed error by permitting the jury to consider "possession of stolen property in the first degree" as a felony sufficient to support assault in the first degree under RCW 9A.36.010(1)(a) which provides in pertinent part:

> Every person, who with intent to kill a human being, or *to commit a felony upon the person or property* of the one assaulted, or of another, shall be guilty of assault in the first degree when he:
> (a) Shall assault another with a firearm . . .

(Italics ours.) He asserts the assault statute is the counterpart of our "felony–murder" statute, RCW 9A.32.030(1)(c), and therefore the rules governing "felony–murder" should be applied in "felony–assault" cases also.[2] He then contends the required causal connection between the crimes and the assault did not exist here, *see State v. Golladay,* 78 Wn.2d 121, 470 P.2d 191 (1970). Further, it is said, the underlying felony of "possession of stolen property" is passive, nonviolent and an inherently nondangerous crime and as such should not support a felony–assault conviction. In both of these arguments appellant, in effect, opts for a rule that would consider only the statutory elements of the crime in the abstract and would exclude, without considering any attendant facts, all felonies which on the face of the statute do not appear to be inherently dangerous. This view is overly restrictive.

Appellant's suggested consideration of "possession of stolen property in the first degree" would force us to view the crime in a vacuum. It would require a cavalier disregard of facts surrounding the material event, *i.e.,* appellant's need to commit an assault to remain in possession of the booty and to escape. It would require us to disregard the fact that before committing the crimes involved appellant armed himself, apparently contemplating that violence

---

[2]There appears to be no precedential support for the proposition that "felony–murder" rules should be applied in "felony–assault" cases as argued by appellant.

might be necessary.

 Undoubtedly a small minority of states which have established an "inherently dangerous" limitation to the "felony–murder" rule follow the position taken by appellant. The better view, however, has permitted a somewhat more unrestricted use of collateral felonies. This view requires that there be a causal connection between the collateral felony and the death and that the death be a reasonably foreseeable byproduct of the underlying felony. In determining these issues courts have looked both to the nature of the felony and to the circumstances surrounding its commission, including whether the participants appear to have contemplated that violence might be necessary.[3]

The foregoing is wholly logical. One may commit a felony that in and of itself involves no element of human risk, but may resort to a dangerous way of committing it or may use dangerous force to deter others from interfering. Thus, that which in a vacuum might appear relatively harmless may become dangerous in total application.

By applying the majority rule, and considering the surrounding facts, it is immediately clear there is a close causal connection between the possession of stolen goods and appellant's assaultive behavior in the instant case. Appellant and his codefendant appear to have concluded it was necessary to resort to violence to deter others from interfering with their possession of stolen property and to avoid apprehension. If they had not been in possession of stolen property, there would have been less danger of arrest by the police officer, and consequently that much less reason

---

[3]*See, e.g., Jenkins v. State,* 230 A.2d 262 (Del. 1967) (both nature of felony and circumstances of its commission are relevant); *Lee v. United States,* 112 F.2d 46 (D.C. Cir. 1940); *People v. Golson,* 32 Ill. 2d 398, 207 N.E.2d 68 (1965), *cert. denied,* 384 U.S. 1023, 16 L. Ed. 2d 1026, 86 S. Ct. 1951, *rehearing denied,* 385 U.S. 892, 17 L. Ed. 2d 125, 87 S. Ct. 21 (1966) (whether violence was contemplated is relevant); *State v. Goodseal,* 220 Kan. 487, 553 P.2d 279 (1976); *State v. Collins,* 297 A.2d 620 (Me. 1972); *State v. Harrison,* 90 N.M. 439, 564 P.2d 1321 (1977); *State v. Thompson,* 280 N.C. 202, 185 S.E.2d 666 (1972) ("substantial foreseeable human risk" due to circumstances of commission of felony); *Wade v. State,* 581 P.2d 914 (Okla. Crim. 1978).

to assault him. Even the initial step of arming themselves indicates violence was anticipated in any one of the several segments of the escapade. We hold that the trial court properly permitted the jury to consider "possession of stolen property in the first degree" as a felony sufficient to support assault in the first degree under RCW 9A.36-.010(1)(a).

Finally, appellant contends the trial court erred by permitting the jury to consider, by means of special verdicts, a single act of being armed with a deadly weapon/firearm for the purpose of enhancing the penalty for both the burglary and theft convictions, *i.e.,* counts 2 and 3. He argues that the burglary and theft arose out of the same transaction and were inseparably interwoven. Thus, it is reasoned, the single act of being armed with a deadly weapon/firearm should not result in penalty enhancements for both burglary and theft. He asserts that such would be double jeopardy.

■ Appellant has oversimplified both the facts and the applicable law. While the *state of being armed* was the same in both the burglary and the theft, the *acts performed* to constitute the two enhanced crimes are quite different both physically and chronologically. Under the facts of this case the burglary was complete once appellant entered the building with intent to steal property therein.[4] The theft occurred after the unlawful entry and took place only when appellant actually took the property. It continued until after he left the building, loaded the truck and drove away.[5] In short, these were separate crimes with distinctly different elements, committed during different seg-

---

[4]RCW 9A.52.030:

"Burglary in the second degree. (1) A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building . . ."

[5]RCW 9A.56.020:

"Theft—Definition . . . (1) 'Theft' means:

"(a) To wrongfully obtain or exert unauthorized control over the property . . . of another . . . with intent to deprive him of such property . . ."

ments of time. At best they were only close in point of time. Thus, under the facts of this case, appellant having been armed during one time segment would not constitute having been armed for the purpose of enhancing the penalty of a crime that occurred during another segment of time.[6] A person is not subjected to double jeopardy because two charges arise from the same general incident unless the evidence required to support a conviction on one of them would have been sufficient to warrant a conviction on the other. *State v. Roybal,* 82 Wn.2d 577, 512 P.2d 718 (1973); *State v. Harp,* 13 Wn. App. 239, 534 P.2d 842 (1975).

■ The double jeopardy clause protects one against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969). Here, the special verdicts did not create a multiple punishment for the same offense for the reasons set forth above and for the further reason that RCW 9.95.040 and RCW 9.41.025 do not in themselves create criminal offenses. They merely limit the discretion of the trial court and the Board of Prison Terms and Paroles in the setting of minimum sentences.[7] *State v. Slaughter,* 70 Wn.2d 935, 940, 425 P.2d 876 (1967); *State v. Harp, supra.* There was no double jeopardy as envisioned by the fifth amendment to the United States Constitution or Const. art. 1, § 9.

---

[6]The jury obviously felt there was a distinction between enhancing the two offenses since it only enhanced the theft conviction of appellant's codefendant, Alford. There was evidence that Alford used a crowbar during the breaking and entering of the shop, and retrieved his rifle during the theft portion of the incident.

[7]We note with interest that this case does not actually involve multiple enhancement as a practical matter. Appellant was sentenced to a maximum term of not more than 10 years on count 2 (burglary in the second degree) and 10 years on count 3 (theft in the first degree) *to run concurrently.* The enhancement under RCW 9.95.040 requiring a 5–year minimum term to be fixed by the Board of Prison Terms and Paroles would thus be applied to both 10–year sentences in a concurrent manner leaving but one enhanced period to be served. The same practical result would follow from the trial court's application of RCW 9.41.025 disallowing suspension or deferral of a sentence.

The Court of Appeals is affirmed.

BRACHTENBACH, C.J., ROSELLINI, DOLLIVER, HICKS, WILLIAMS, and DIMMICK, JJ., and JACQUES, J. Pro Tem., concur.

UTTER, J. (concurring)—I concur in the majority opinion insofar as it resolves the issues necessarily before the court for decision.