[No. 35455-1-II. Division Two. March 10, 2009.]

*In the Matter of the Personal Restraint of* CHRISTOPHER DELGADO, *Petitioner.*

*In the Matter of the Personal Restraint of* ERNESTO MEZA, *Petitioner.*

224

*Suzanne L. Elliott*, for petitioners.

*Edward G. Holm, Prosecuting Attorney*, and *Carol L. La Verne, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, J. — Christopher Delgado and Ernesto Meza seek relief from personal restraint imposed after the State charged deadly weapon sentencing enhancements and the jury entered deadly weapon special findings, but the sentencing court imposed firearm enhancements. A panel of judges reviewed the petitions in order to consider the implications of our Supreme Court's recent decision in *State v. Recuenco*, 163 Wn.2d 428, 180 P.3d 1276 (2008) (*Recuenco* III).

¶2 In *Recuenco* III, our Supreme Court held that the State cannot elect to charge a deadly weapon sentence enhancement and send deadly weapon jury instructions and special verdicts to the jury and then, at sentencing, request firearm enhancements. 163 Wn.2d 428. Imposition of firearm enhancements in such a situation is never harmless error, the court held, because the defendant was not notified that he had to defend against a firearm enhancement and because the jury's deadly weapon verdict did not authorize the firearm enhancement. *Recuenco* III, 163 Wn.2d at 442.

¶3 *Recuenco* III controls our decision here. When Delgado and Meza committed the offenses, former RCW 9.94A.510(3) (2000) governed firearm enhancements and former RCW 9.94A.510(4) and RCW 9.94A.602 governed deadly weapon enhancements. The State charged that Delgado and Meza committed their crimes "while armed with a deadly weapon" and it did not specify that the petitioners must defend themselves under the firearm enhancement provision, former RCW 9.94A.510(3). The jury was instructed only on the deadly weapon enhancement. Several special verdict forms state that Delgado and Meza had committed the crimes while armed with a "firearm," but these special verdicts actually reflected the jury's deadly weapon findings. On this basis, the sentencing court lacked authority to enter firearm enhancements.

¶4 The facts here are nearly identical to *Recuenco* III and, accordingly, we must apply the same remedy. We vacate the firearm enhancements and remand for entry of

corrected judgments and sentences imposing deadly weapon enhancements in lieu of the firearm enhancements.[1] *Accord State v. Bainard*, 148 Wn. App. 93, 199 P.3d 460 (2009).

## FACTS

¶5 Ryan Waslawski had been selling drugs for Meza but decided to stop.[2] Waslawski and Meza arranged to meet for lunch. On January 9, 2003, Waslawski got into Meza's truck. Delgado and William Kravis were already sitting inside. Meza confronted Waslawski about why he stopped selling drugs for him, loaded a semiautomatic handgun, and drove down a gravel road. Delgado pointed out that an old man was crossing the road and might see them, so Meza drove to a vacant lot. Meza ordered everyone to get out of the truck and then shot Waslawski. Meza allowed Waslawski back in the car on the condition that he tell others that he was the victim of a drive-by shooting. Meza dropped Waslawski off at a service station, where he called for help. At Harborview Hospital, doctors treated Waslawski for a punctured lung, damage to his aorta, and nerve damage. Kravis later cooperated with police and revealed that Meza had threatened to kill him and his family if he told police what had happened.

¶6 The State charged Meza by third amended information with first degree attempted murder or, in the alternative, first degree assault (count I), first degree kidnapping (count II), and two counts of intimidating a witness (counts III, Waslawski, and IV, Kravis). The State also charged Delgado by second amended information with first degree

---

[1] Delgado was sentenced to two 60-month firearm enhancements, which should be replaced with two 24-month deadly weapon enhancements. *See* former RCW 9.94A.510(4)(a). Meza was sentenced to two 60-month firearm enhancements and two 36-month firearm enhancements; the resentencing court should substitute these with two 24-month deadly weapon enhancements and two 12-month deadly weapon enhancements. *See* former RCW 9.94A.510(4)(a)-(b).

[2] Unless otherwise indicated, the facts are taken from the order affirming judgment and sentence for Delgado and Meza's direct appeal. Ruling Affirming Judgments and Sentences, *In re Pers. Restraint of Delgado*, Nos. 30662-0-II and 31710-3-II (Wash. Ct. App. Dec. 3, 2004) (Ruling).

attempted murder or, in the alternative, first degree assault (count I) and first degree kidnapping (count II).[3] For each of Meza's and Delgado's charges, the State alleged that the defendant or an accomplice committed the crime while "armed with a deadly weapon, to-wit: a firearm." Resp. to Pet., Apps. C, D.

¶7 The sentence enhancement portions of the informations cited RCW 9.94A.602, which provided that a jury must enter a special verdict regarding the use of a *deadly weapon*. The informations also cited former RCW 9.94A-.510, which set forth both firearm and deadly weapon sentence enhancements. But the informations did not specify that the State was charging Meza and Delgado under former RCW 9.94A.510(3), the section relating to firearm enhancements, rather than, or in addition to, former RCW 9.94A.510(4), the section relating to deadly weapon sentence enhancements.

¶8 Meza and Delgado were tried together as codefendants. The trial court instructed the jury:

INSTRUCTION NO. 32

For purposes of a special verdict the State must prove beyond a reasonable doubt that the defendant was armed with a deadly weapon at the time of the commission of each of the crimes charged in this case.

A pistol, revolver, or any other firearm is a deadly weapon whether loaded or unloaded.

If one participant to a crime is armed with a deadly weapon, all accomplices to that participant are deemed to be so armed, even if only one deadly weapon is involved.

INSTRUCTION NO. 33

The term "deadly weapon" includes a firearm, whether loaded or not.

Resp. to Pet. App. E. The trial court did not instruct the jury on the definition of "firearm."

---

[3] The State also charged Delgado with first degree rendering criminal assistance while armed with a deadly weapon—firearm (count III), but the jury acquitted on that charge.

¶9 The jury found Meza guilty of attempted first degree murder (count I), first degree kidnapping (count II), and two counts of witness intimidation (counts III and IV). The jury also found Delgado guilty of first degree assault (the alternative in count I) and first degree kidnapping (count II).

¶10 In addition, the jury entered special verdicts. It specially found that Meza or another participant was "armed with a firearm" when he committed attempted first degree murder and first degree kidnapping, was "armed with a deadly weapon" when he committed witness intimidation as charged in count III, and was "armed with a firearm" when he committed witness intimidation as charged in count IV. The jury also entered special verdicts that Delgado or another participant was "armed with a firearm" when he committed each crime for which he was convicted, first degree assault and first degree kidnapping. The differing language of "armed with a firearm" and "armed with a deadly weapon" was preprinted on the special verdict forms. On Meza's and Delgado's judgments and sentences, the sentencing court entered firearm sentence enhancements for each count.

¶11 Meza and Delgado filed direct appeals with this court, which we consolidated and resolved through a ruling affirming judgment and sentence.[4] We issued a mandate on September 19, 2005. Meza and Delgado filed timely personal restraint petitions (PRP) on August 30, 2006, accompanied by briefs (written by private counsel) that are identical, other than the petitioner's name. We consolidated the petitions, stayed them pending our Supreme Court's decision in *Recuenco* III, and ordered additional briefing on *Recuenco* III's effect on the petitions.

---

[4] In their direct appeals, both argued that the "firearm enhancement jury instructions were deficient." Ruling at 1-2. Their arguments were limited, however, to the proposition that the jury instructions failed to require the jury to find that a nexus existed between the defendant, the crimes, and the weapon. We affirmed on this ground because uncontroverted evidence adduced at trial established the nexus and, therefore, any error was harmless. We rejected all other grounds raised.

## ANALYSIS

PRP Standards

 ¶12 As a threshold matter, we note that a personal restraint petitioner may not renew an issue that was raised and rejected on direct appeal unless the interests of justice require relitigation of that issue. *In re Pers. Restraint of Taylor*, 105 Wn.2d 683, 688, 717 P.2d 755 (1986). The petitioner may raise new issues, however, including both errors of constitutional magnitude and nonconstitutional errors. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 812, 792 P.2d 506 (1990); *In re Pers. Restraint of Hews*, 99 Wn.2d 80, 87, 660 P.2d 263 (1983).

¶13 To obtain relief with respect to either constitutional or nonconstitutional claims, the petitioner must show that the error caused prejudice. *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 328-29, 823 P.2d 492 (1992); *In re Cook*, 114 Wn.2d at 810, 812. To prevail on a claim of constitutional error, the petitioner must also demonstrate actual and substantial prejudice. *In re Pers. Restraint of Mercer*, 108 Wn.2d 714, 721, 741 P.2d 559 (1987). And to prevail on a nonconstitutional claim, the petitioner must show "a fundamental defect which inherently results in a complete miscarriage of justice." *In re Cook*, 114 Wn.2d at 812. Regardless of whether he bases his challenges on constitutional or nonconstitutional error, he must support his petition with facts or evidence supporting his claims of unlawful restraint and not rely solely on conclusory allegations. *In re Cook*, 114 Wn.2d at 813-14.

*Recuenco* III

¶14 The matters before us involve intense examination of *Recuenco* III in its contextual background. Accordingly, we begin with overview of that case.

¶15 Any fact, besides the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved

beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 476, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). In *Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), the United States Supreme Court clarified its holding in *Apprendi*, stating that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*"

¶16 In *State v. Recuenco*, 154 Wn.2d 156, 160, 162-63, 110 P.3d 188 (2005) (*Recuenco* I), *rev'd on other grounds*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006) (*Recuenco* II), our Supreme Court held that it was a *Blakely* violation for the sentencing court to enter a firearm enhancement upon the jury's return of a deadly weapon special verdict. The State had charged Arturo Recuenco with second degree assault while " 'armed with a deadly weapon, to-wit: a handgun, under the authority of RCW 9.94A.125 and 9.94A.310.' " *Recuenco* I, 154 Wn.2d at 159. Defense counsel and the prosecutor proposed identical special verdict forms instructing the jury that in order to answer the special verdict affirmatively, the State had to prove beyond a reasonable doubt that the defendant was armed with a "deadly weapon" when he committed assault. *Recuenco* I, 154 Wn.2d at 159. The jury found that Recuenco was armed with a deadly weapon, but the trial court imposed a firearm sentencing enhancement. *Recuenco* I, 154 Wn.2d at 159. It was undisputed that the only deadly weapon that Recuenco allegedly used in the assault was a gun. *Recuenco* I, 154 Wn.2d at 158-59.

¶17 Our Supreme Court held that the trial court violated Recuenco's right to a jury trial because the judge, not the jury, found the fact that Recuenco was armed with a firearm. *Recuenco* I, 154 Wn.2d at 162. The court also held that such errors regarding the right to jury findings could never be harmless. *Recuenco* I, 154 Wn.2d at 164.

¶18 The United States Supreme Court reviewed *Recuenco* and held that *Blakely* errors may be harmless. *Recuenco* II, 548 U.S. 212. The Court remanded back to the Washington

Supreme Court to review the matter in light of its decision. *Recuenco* II, 548 U.S. at 222.

¶19 On remand, our Supreme Court took a markedly different legal approach than it did in *Recuenco* I. *Recuenco* III, 163 Wn.2d at 431, 442. The court acknowledged that it had previously treated the issue as "an error of judicial fact finding." *Recuenco* III, 163 Wn.2d at 441. Upon close reexamination, however, the court refocused its analysis:

> The error in this case occurred when the trial judge imposed a sentence enhancement for something the State did not ask for and the jury did not find. The trial court simply exceeded its authority in imposing a sentence not authorized by the charges.

*Recuenco* III, 163 Wn.2d at 442.

¶20 The *Recuenco* III court relied on several legal theories to support its holding. First, it discussed the enhancement as the State's pragmatic charging decision. *Recuenco* III, 163 Wn.2d at 433-35. The court reasoned:

> [In *State v. Theroff*, 95 Wn.2d 385, 622 P.2d 1240 (1980), w]e remanded for resentencing because "[w]hen prosecutors seek enhanced penalties, notice of their intent must be set forth in the information." *Theroff*, 95 Wn.2d at 392. Thus, unless a complaint is properly amended, once the State elects which specific charges it is pursuing and includes elements in the charging document, it is bound by that decision. We have not altered this requirement.
>
> Recuenco's case is similar because it also involves a charging decision made by the State. The prosecutor chose to charge the lesser enhancement of "deadly weapon." Former RCW 9.94A-.310(4)(b). This provided Recuenco with notice of the charged offense and the ability to prepare a defense, as required by our state and federal constitutions. Moreover, consistent with the specific charge brought, the jury was instructed on the deadly weapon enhancement and specifically found Recuenco guilty of second degree assault while armed with a deadly weapon. There is nothing erroneous about that finding.

*Recuenco III*, 163 Wn.2d at 435-36 (second alteration in original) (footnotes omitted). To summarize, the State charged Recuenco with a deadly weapon sentencing enhancement when it wrote in the information that he was armed " 'with a deadly weapon, to-wit: a handgun.' " *Recuenco III*, 163 Wn.2d at 431, 435-36. The deadly weapon charge was not defective but, rather, it was the State's choice. *Recuenco III*, 163 Wn.2d at 435-36. The State did not amend the information and, therefore, could not obtain a verdict for an uncharged firearm enhancement. *Recuenco III*, 163 Wn.2d at 435-36.

¶21 Second, the court discussed the adequacy of the evidence, jury instructions, and special verdict form. *Recuenco III*, 163 Wn.2d at 437-39. The court explained that proper jury instructions would have allowed the jury to enter a firearm special verdict only if the State met its burden to prove that the weapon Recuenco used was a "firearm" under the statutory definition, which requires that the weapon be operable at the time of the commission of the offense. *Recuenco III*, 163 Wn.2d at 437-39; *see also* RCW 9.41.010(1) (defining "firearm"). The court also noted that the evidence was insufficient to support a firearm enhancement because "[t]he jury was not given facts supporting the firearm enhancements nor given instructions to determine if it was applicable in this case." *Recuenco III*, 163 Wn.2d at 439.

¶22 Third, the court held that Recuenco did not receive notice of a firearm enhancement until sentencing and, therefore, imposition of such an enhancement violated his right to due process. *Recuenco III*, 163 Wn.2d at 440-41. On this point, the dissent urged that this issue should be analyzed as a postverdict challenge to the charging document under *Kjorsvik*, which requires liberal construction in favor of validity. *Recuenco III*, 163 Wn.2d at 449-50 (Fairhurst, J., dissenting)[5] (citing *State v. Kjorsvik*, 117 Wn.2d 93, 102,

---

[5] The court split five to four, with Alexander, C.J.; Madsen, Sanders, and Owens, JJ., concurring with Justice C. Johnson's majority opinion and Chambers and J.M. Johnson, JJ.; and Bridge, J. Pro Tem., concurring with Justice Fairhurst's dissent.

812 P.2d 86 (1991)). Under that standard, the dissent argued, the information was sufficient because it contains citations to the statute for firearm and deadly weapon enhancements and states that the deadly weapon enhancement relates to a handgun. *Recuenco* III, 163 Wn.2d at 449-50 (Fairhurst, J., dissenting). The majority rejected this approach because, it reiterated, the information was not defective and the defendant had no duty to object to the State's choice to charge a deadly weapon enhancement instead of a firearm enhancement. *Recuenco* III, 163 Wn.2d at 440-41. In this context, we now turn to the relevant facts and analysis for Delgado's and Meza's cases.

APPLICATION OF *RECUENCO* III TO DELGADO'S AND MEZA'S FIREARM ENHANCEMENTS

¶23 Delgado and Meza argue that *Recuenco* III requires that we reverse each of their firearm sentence enhancements. We agree.

¶24 Again, for each of Meza's and Delgado's charges, the State alleged that the defendant or an accomplice committed the crime while "armed with a deadly weapon, to-wit: a firearm." The jury was instructed to return special verdicts if the State proved beyond a reasonable doubt that the defendant was "armed with a deadly weapon" when he committed the charged crime. And the jury instructions specified that "[t]he term 'deadly weapon' includes any firearm, whether loaded or not," but the instructions did not define "firearm." Resp. to Pet., App. E.

¶25 The jury specially found that Meza or another participant was "armed with a *firearm*" when he committed first degree attempted murder and first degree kidnapping, was "armed with a *deadly weapon*" when he committed witness intimidation of Waslawski (count III), and was "armed with a *firearm*" when he committed witness intimidation of Kravis (count IV). The jury also entered special verdicts that Delgado or another participant was "armed

with a *firearm*" when he committed each crime for which he was convicted, first degree assault and first degree kidnapping. The differing language of "armed with a firearm" and "armed with a deadly weapon" was preprinted on the special verdict forms. The sentencing court entered firearm sentence enhancements for each count in which the jury returned a special verdict.

¶26 This case presents facts almost identical to those in *Recuenco* I regarding Meza's conviction on count III. As in *Recuenco* I, the State alleged that each of Meza's and Delgado's crimes was committed while "armed with a deadly weapon, to-wit: a firearm." 154 Wn.2d at 160 (analyzing charge that assault was committed while "armed with a deadly weapon, to-wit: a handgun"). In both cases, the trial courts instructed the jury that, in order to answer the special verdict affirmatively, the State had to prove beyond a reasonable doubt that the defendant was armed with a "deadly weapon" when he committed assault. *Recuenco* I, 154 Wn.2d at 159-60. And in both cases, the jury was instructed on the definition of "deadly weapon" but not on the definition of "firearm." *Recuenco* I, 154 Wn.2d at 160. Relating only to Meza's count III, the jury returned a deadly weapon special verdict, but the sentencing court entered a firearm enhancement that the jury's deadly weapon verdict did not support. *See Recuenco* III, 163 Wn.2d 428.

¶27 The special verdict forms for all other counts, however, stated that Meza and Delgado were "armed with a firearm" when they committed the specified crimes. Thus, the question becomes whether this "firearm" language in the special verdict forms is legally sufficient to allow the sentencing judge to impose firearm enhancements. In *State v. Pharr*, 131 Wn. App. 119, 124-25, 126 P.3d 66 (2006), *review denied*, 160 Wn.2d 1022 (2007), we considered this issue in the very similar context of a mislabeled weapon special verdict form that did not match the jury instructions. In *Pharr*, the jury was instructed that, " '[f]or the purposes of a special verdict, the State must prove beyond a reasonable doubt that the defendant was armed with a

*firearm* at the time of the commission of the crime.' " 131 Wn. App. at 124 (emphasis added). The jury was also instructed on the definition of "firearm" for sentencing enhancement purposes. *Pharr*, 131 Wn. App. at 124. Thus, the special verdict in *Pharr*, although labeled "deadly weapon," necessarily reflected the jury's finding that the defendant was armed with a firearm. 131 Wn. App. at 124-25.

¶28 The present situation presents the same type of error as in *Pharr*—the special verdict forms were labeled incorrectly and they do not match the special verdict jury instructions. 131 Wn. App. at 124-25. Here, the jury was instructed that it must find the defendants were armed with a "deadly weapon" in order to return the special verdicts. And the jury was not instructed on the definition of "firearm" for sentencing enhancement purposes, although "deadly weapon" was defined. Thus, the special verdicts, although labeled "firearm," necessarily reflect the jury's findings that Meza and Delgado were armed with "deadly weapons" that were not necessarily operable firearms. *State v. Grisby*, 97 Wn.2d 493, 509, 647 P.2d 6 (1982) ("Jurors are presumed to follow instructions."), *cert. denied,* 459 U.S. 1211 (1983). And a weapon is not a "firearm" under the statutory definition unless it is operable. RCW 9.41-.010(1). Because the jury here did not find that Meza and Delgado were armed with operable firearms, the sentencing court exceeded its authority by entering a sentence that does not reflect the jury's findings. *See Recuenco III*, 163 Wn.2d at 439, 442; *Recuenco I*, 154 Wn.2d at 159-60.

■ ■ ¶29 This error is not subject to harmless error analysis regarding instructional error because the State did not charge Meza and Delgado with firearm enhancements and, therefore, the jury instructions contained no error. *Recuenco III*, 163 Wn.2d at 442. If harmless error analysis applied, we would almost certainly deny relief because it is undisputed that the deadly weapon in question was the gun that Meza used to shoot Waslawski and, therefore, the deadly weapon at issue meets the definition of "firearm"

beyond a reasonable doubt. *See* RCW 9.41.010(1) (defining "firearm" as "a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder"); *State v. Hall*, 95 Wn.2d 536, 540-41, 627 P.2d 101 (1981) (instructional error harmless beyond a reasonable doubt where it was uncontested that victim was shot with weapon). But because these are PRPs, we must determine whether the error in imposing firearm enhancements that the jury did not authorize caused actual prejudice. *See In re St. Pierre*, 118 Wn.2d at 328-29; *In re Cook*, 114 Wn.2d at 810, 812. Because Meza and Delgado received higher sentences than the jury's verdict authorized, the error actually prejudiced them. Thus, *Recuenco* III compels that we reverse each of Meza's and Delgado's firearm enhancements and remand to the trial court for resentencing and imposition of deadly weapon enhancements. *Accord Bainard*, 148 Wn. App. 93.

ADDITIONAL ARGUMENTS

¶30 Meza and Delgado additionally argue that the sentencing court (1) violated their right to jury trial when it found that the convictions were separate and distinct criminal conduct for purposes of imposing consecutive sentences; (2) abused its discretion by imposing consecutive sentences because it failed to find, on the record, that the crimes were separate and distinct; and (3) violated the prohibition against double jeopardy by imposing multiple sentencing enhancements for the use of one weapon. We deny relief on each of these grounds.

A. CONSECUTIVE SENTENCES—RIGHT TO JURY TRIAL

¶31 Meza and Delgado argue that a jury must find whether criminal conduct for two crimes is "separate and distinct" under RCW 9.94A.589(1), the statute that outlines whether two crimes should run consecutively. They acknowledge that our Supreme Court ruled to the contrary in *State v. Cubias*, 155 Wn.2d 549, 556, 120 P.3d 929 (2005). The United States Supreme Court also recently held that

the right to jury trial does not inhibit states from allowing judges, rather than juries, to find facts necessary to impose consecutive sentences for multiple offenses. *Oregon v. Ice*, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009). We follow the mandatory authority of *Cubias* and deny the petitions on this ground.

## B. CONSECUTIVE SENTENCES—ABUSE OF DISCRETION

¶32 Next, Meza and Delgado argue that the sentencing court abused its discretion when it imposed consecutive sentences without first finding on the record that the crimes were separate and distinct. A trial court abuses its discretion if it bases its decision on untenable grounds or untenable reasons. *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002) (citing *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). The petitioners argue that the sentencing judge was operating under a misunderstanding of law when it "seem[ed] to have ruled that if the crimes were not the 'same criminal conduct' the [Sentencing Reform Act of 1981] required him to run the sentences consecutively." PRP (Delgado) at 17.

¶33 Contrary to petitioner's assertions, Washington courts have held that the phrases "same criminal conduct" and "separate and distinct criminal conduct," as used in RCW 9.94A.589(1), are merely opposites. Because the legislature failed to define "separate and distinct criminal conduct," a court answers whether the conduct is "separate and distinct" by performing the test for "same criminal conduct." *State v. Tili*, 139 Wn.2d 107, 122-23, 985 P.2d 365 (1999). If the sentencing court finds that two or more crimes are not the "same criminal conduct," then it has necessarily found that those crimes are "separate and distinct criminal conduct." *Tili*, 139 Wn.2d at 122-23; *State v. Channon*, 105 Wn. App. 869, 877, 20 P.3d 476, *review denied*, 144 Wn.2d 1017 (2001); *State v. Price*, 103 Wn. App. 845, 855, 14 P.3d 841 (2000), *review denied*, 143 Wn.2d 1014 (2001). The petitioners present no reason to diverge from this long-standing case law. We deny relief on this ground.

C. DOUBLE JEOPARDY—SENTENCE ENHANCEMENTS

¶34 Last, Meza and Delgado argue that the sentencing court violated the prohibition against double jeopardy by imposing multiple sentencing enhancements for the use of one weapon. Petitioners acknowledge that our Supreme Court has held, in *State v. Claborn*, 95 Wn.2d 629, 637, 628 P.2d 467 (1981), that sentencing enhancements are not "offenses" as contemplated by the double jeopardy clause's protection against multiple punishments for the same offense. But the petitioners urge us to reexamine the *Claborn* analysis in light of *Blakely*. After petitioners filed their briefs, Divisions One and Two of this court rejected this argument, holding that (1) *Blakely* does not implicate double jeopardy and (2) sentence enhancements are not subject to double jeopardy analysis. *State v. Kelley*, 146 Wn. App. 370, 374-75, 189 P.3d 853 (2008); *State v. Nguyen*, 134 Wn. App. 863, 866-69, 142 P.3d 1117 (2006), *review denied*, 163 Wn.2d 1053, *cert. denied*, 129 S. Ct. 644 (2008). We agree with those courts and deny relief on this ground.

¶35 In conclusion, we vacate Delgado's and Meza's firearm enhancements and remand to the trial court to impose, in their place, the deadly weapon enhancements that were charged by the State and found by a jury beyond a reasonable doubt. We deny relief on all other grounds.

¶36 Petition granted in part and denied in part.

PENOYAR, A.C.J., and ARMSTRONG, J., concur.