IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON, | No. 88036-5-I |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DONOVAN JAY MCKINLAY, | |
| Appellant. | |

BOWMAN, J. — A jury convicted Donovan Jay McKinlay of several crimes, including two counts of assault in the second degree and one count of attempting to elude a pursuing police vehicle. McKinlay contends, and we agree, that insufficient evidence supports those convictions. Accordingly, we reverse and remand for the trial court to vacate those three convictions, enter judgment on the two lesser included offenses of assault in the fourth degree that were necessarily proved at trial, and resentence McKinlay.

FACTS

In 2023, Jose Orozco and his wife Laura Orozco were both employees of Jerry's Automotive and Towing in Olympia. On May 5, they went to their employer's tow yard at around dusk. They saw two individuals in the yard, later identified as McKinlay and Joshua Allen Lowrey, who appeared to be removing items from vehicles stored in the tow yard. On hearing Jose's[1] tow truck pull up,

---

[1] Because Jose Orozco and Laura Orozco share the same surname, we use their first names for clarity and mean no disrespect by doing so.

McKinlay and Lowrey ran in different directions toward two holes in the tow yard's fencing.

Lowrey ran to the gap in the fencing near Jose's tow truck and Jose confronted him. Jose was yelling while holding a "jack stand top" and demanded that Lowrey come outside the tow yard and get down on the ground. Lowrey complied. Jose then directed Laura to get his phone and call 911 and their employer.

Meanwhile, McKinlay drove up in a white Toyota Camry and stopped at "the tail end" of Jose's truck. At that point, Lowrey stopped cooperating, stood up, and pushed Jose. Jose grabbed Lowrey as he fell to the ground and the two men scuffled. Laura went over to try to pull them apart. McKinlay then displayed what looked like a 9 mm firearm and pointed it at Jose and Laura; first standing outside the Camry while holding it over the top of the car, then from inside the Camry while sitting in the driver's seat and pointing it through the passenger-side window. Jose released Lowrey when he saw McKinlay place the weapon on the passenger seat so he could focus on "hot-wiring" the Camry, which had stalled. As soon as the Camry started to run again, Lowrey got into the car and McKinlay quickly sped off.

Based on Laura's 911 call and description of the Camry, Olympia Police Department officers found the car. One officer, Sergeant Matthew Renschler, activated his patrol car's lights, signaling the Camry to stop when it became apparent that McKinlay was about to enter a one-way street, travelling in the wrong direction. In response, the Camry accelerated, and Sergeant Renschler

2

turned off his emergency lights. After McKinlay drove onto Interstate-5, Olympia Police Department Officer Steven Thomas caught up to the Camry and activated his patrol car's lights and siren. Again, the Camry did not pull over or exit the freeway but continued to travel at around 90 miles per hour, moving around other vehicles.

The Camry eventually slowed and pulled onto the shoulder as if it was stopping. But then it sharply veered in front of the pursuing police car and spun around in the opposite direction. Realizing that McKinlay intended to travel northbound in the southbound lanes, Officer Thomas unsuccessfully attempted to prevent him from doing so by striking the side of the Camry to pin it against the center median. The Camry finally stopped after causing a collision with an oncoming car.

The State charged McKinlay with burglary in the first degree, two counts of assault in the second degree of Jose and Laura, attempting to elude a pursuing police vehicle, and vehicular assault.[2] During the five-day jury trial, several witnesses testified, including Jose, Laura, law enforcement officers, and the driver whose car McKinlay had struck. The jury acquitted McKinlay of vehicular assault but convicted him on the other four counts. The trial court imposed concurrent standard-range sentences on each count. McKinlay appeals.

ANALYSIS

McKinlay challenges the sufficiency of the evidence supporting his convictions for assault in the second degree of Jose and Laura and attempting to

---

[2] The State also charged Lowrey as a codefendant. He pleaded guilty before trial.

3

elude a pursuing police vehicle. We agree insufficient evidence supports those convictions.

The State must prove each element of a charged crime beyond a reasonable doubt. *State v. Anderson*, 198 Wn.2d 672, 686, 498 P.3d 903 (2021). Evidence is sufficient to support a conviction if, viewed in a light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences that a trier of fact can draw from that evidence. *Id.* We review a claim of insufficiency of the evidence de novo. *State v. Berg*, 181 Wn.2d 857, 867, 337 P.3d 310 (2014).

1. Second Degree Assaults of Jose and Laura

McKinlay contends there was no evidence that he assaulted Jose and Laura with intent to enter or remain unlawfully in the tow yard. We agree.

The State charged McKinlay with two counts of second degree assault of Jose and Laura under RCW 9A.36.021(1)(e). RCW 9A.36.021(1)(e) provides that "[a] person is guilty of assault in the second degree if he or she, . . . [w]ith intent to commit a felony, assaults another." Here, the State asserted that McKinlay assaulted both Jose and Laura with intent to commit burglary in the second degree. Consistent with RCW 9A.52.030(1), the court instructed the jury that a person commits burglary in the second degree if "he or she enters or remains unlawfully in a building with intent to commit a crime against a person or

4

property therein."[3]

As McKinlay points out, it was undisputed below that the purpose of the assaults was to facilitate the escape of his accomplice, Lowrey, and to ensure they both avoided arrest. Indeed, the State asserted in its closing remarks that the burglary "was completed" when McKinlay pointed what looked like a firearm at Jose and Laura, and that McKinlay's obvious purpose was to "make [Jose] let go of his accomplice" and "get [Lowrey] free so they could flee." Further, the State argued that McKinlay was guilty of both burglary in the first degree and assault in the second degree because he committed the assaults while in "immediate flight" from the premises where he committed the burglary.

The State was correct that to prove the charged crime of burglary in the first degree, one of the elements it had to prove was that McKinlay assaulted a person while he entered, remained, or was "in immediate flight" from the building or premises where the burglary occurred. *See* RCW 9A.52.020(1)(b). But to prove the separate and distinct crimes of assault in the second degree, the State had to prove that McKinlay assaulted Jose and Laura "[w]ith intent" to commit burglary in the second degree. RCW 9A.36.021(1)(e). Neither the crime of assault in the second degree nor burglary in the second degree include the "immediate flight" language. *See* RCW 9A.36.021(1)(e); RCW 9A.52.030(1). And no evidence showed that McKinlay assaulted Jose or Laura with intent to commit burglary in the second degree. Instead, the evidence showed that

---

[3] The parties agreed below that the fenced tow yard fell within the statutory definition of "building." *See* RCW 9A.04.110(5) ("building" includes any "fenced area").

McKinlay committed the assaults while outside the tow yard, after the burglary "was completed," and with the intent to help Lowrey avoid capture.

Still, the State argues the evidence "demonstrates a causal connection between the burglary and the assaults" because "[the] burglary was ongoing." The State made a similar argument below in response to McKinlay's motion to dismiss the second degree assault counts at trial. There, it argued that the burglary was ongoing because McKinlay remained near the tow yard when he assaulted Jose and Laura. But the State's argument relied on case law involving the felony murder statute, which provides for liability if a person causes a death in the course of committing certain crimes "or in immediate flight therefrom." *See* RCW 9A.32.030(1)(c); *see also State v. Dennison,* 115 Wn.2d 609, 616, 801 P.2d 193 (1990) (defendant's conduct fell "squarely within the first degree felony murder statute" when he unlawfully entered a house while armed and discharged a weapon, resulting in death, while attempting to flee). And the State did not charge McKinlay with felony murder.

On appeal, the State advances a somewhat different "causal connection" argument, asserting that the Washington Supreme Court's decision in *State v. Claborn*, 95 Wn.2d 629, 628 P.2d 467 (1981), resolves the sufficiency question here. We disagree.

In *Claborn*, the defendant and others broke into a tool shop, loaded stolen tools into a stolen truck, and drove away. 95 Wn.2d at 630. When a police officer tried to pull over the truck, one of the defendant's accomplices fired shots at the officer. *Id.* at 631. The State charged the defendant with first degree

6

assault under former RCW 9A.36.010(1)(a) (1975), which provided that a person commits the crime when he assaults another with a firearm "with intent to kill a human being, or to commit a felony." *Id.* at 631, 634.

On appeal, the defendant argued that possession of stolen property could not support a charge of first degree assault because it is a "passive, non-violent and . . . inherently non-dangerous crime," and that under an analysis that governs felony murder, the predicate felony and assault lacked a sufficient "causal connection." *Claborn*, 95 Wn.2d at 634. The Supreme Court noted that for a felony murder conviction, Washington law requires a "causal connection" between the felony and resulting death such that the death is a "reasonably foreseeable" result of the felonious conduct. *Id.* at 635. Assuming the same rule applied and considering the particular facts rather than the elements in the abstract, the court concluded the offenses were causally connected. *Id.* at 635. Accordingly, the court held that "the trial court properly permitted the jury to consider 'possession of stolen property in the first degree' as a felony sufficient to support" the charge of first degree assault. *Id.* at 636.

The issue here is different. McKinlay does not challenge the legal sufficiency of burglary in the second degree as the underlying felony to the assaults. Instead, he argues that sufficient evidence does not support his convictions for second degree assault. And the State needed to prove beyond a reasonable doubt that McKinlay assaulted each victim with intent to commit burglary in the second degree. The extent and nature of the connection between

7

the assaults and the felony McKinlay allegedly intended to commit was not an element the State had to prove. And *Claborn* does not hold otherwise.

Because a rational trier of fact could conclude that McKinlay committed assault only to free Lowrey from where Jose had detained him, the evidence was insufficient to establish assault with intent to commit burglary in the second degree. We reverse both second degree assault convictions.

The State maintains that even if the evidence is insufficient for the assault in the second degree convictions, the appropriate remedy is to remand for the trial court to enter judgment on the lesser included offenses of assault in the fourth degree. We agree.

"When the evidence is insufficient to support a conviction and the conviction is reversed, we may remand for entry of an amended judgment on a lesser included offense." *State v. Hutchins*, 73 Wn. App. 211, 218, 868 P.2d 196 (1994). "[R]emand for resentencing on a lesser included offense is appropriate only when the jury was explicitly instructed on the lesser offense." *State v. Richardson*, 12 Wn. App. 2d 657, 667, 459 P.3d 330 (2020). When the trial court has instructed the jury on a lesser included offense, we may presume that the jury "necessarily" found the elements of the lesser offense in reaching the verdict on the greater offense. *State v. Green*, 94 Wn.2d 216, 234, 616 P.2d 628 (1980).

Fourth degree felony assault is a lesser included offense of assault in the second degree. *State v. Johnson*, 29 Wn. App. 2d 401, 411, 540 P.3d 831, *review denied*, 2 Wn.3d 1035, 547 P.3d 899, *cert. denied*, __ U.S. __, 145 S. Ct.

8

771, 220 L. Ed. 2d 273 (2024).  And the court instructed the jury on the lesser included offenses of assault in the fourth degree of Jose and Laura.  To convict McKinlay on those charges, the jury had to find that McKinlay "assaulted" each victim on May 5, 2023 in Washington.

Because the court instructed the jury on the lesser offenses of assault in the fourth degree of Jose and Laura and the State necessarily proved the elements of those crimes at trial, we remand for the trial court to enter judgment on the two lesser included offenses.

2.  Attempting to Elude

McKinlay argues insufficient evidence supports his conviction for attempting to elude a pursing police vehicle because there was no evidence that either Sergeant Renschler or Officer Thomas was wearing a uniform when they signaled him to stop.  We agree.

To convict McKinlay of attempting to elude a pursuing police vehicle, the State had to prove that he willfully failed or refused to stop and drove in a reckless manner while attempting to elude a pursuing police vehicle after being given a signal to stop by an officer who was "in uniform" and whose vehicle was equipped with lights and sirens.  RCW 46.61.024(1).[4]  A conviction for attempting to elude a police vehicle "requires the State to prove, beyond a reasonable doubt, that the defendant was signaled to stop by a uniformed police officer." *State v. Connors*, 9 Wn. App. 2d 93, 95, 442 P.3d 20 (2019); *see also State v. Hudson,* 85 Wn. App. 401, 403, 932 P.2d 714 (1997) ("The eluding statute clearly

---

[4] The trial court's to-convict instruction tracked the language of the statute.

requires evidence that the officer giving the signal to stop shall be in uniform.");

*State v. Fussell*, 84 Wn. App. 126, 128, 925 P.2d 642 (1996) (uniform

requirement is an "express element" of attempting to elude a pursuing police

officer).  Our courts have held that

> [e]vidence that the officers were in a marked vehicle and that [the defendant] probably knew that they were police officers, without more, is insufficient to permit a rational trier of fact to infer beyond a reasonable doubt that [the] officers were in uniform.

*Hudson*, 85 Wn. App. at 405; *see also State v. Ritts*, 94 Wn. App. 784, 788, 973

P.2d 493 (1999) (defendant's "admission that he knew his pursuer was a law

enforcement officer does not relieve the State of proving the elements of the

eluding statute").

Here, neither of the Olympia Police Department officers who signaled for

McKinlay to pull over using lights and/or sirens testified that they were in uniform.

Nor did they describe the clothing they wore during the incident.  *Cf. Connors*, 9

Wn. App. 2d at 95 (evidence that officer wore " 'normal clothes' " underneath a

police vest was sufficient).  Still, the State argues that unlike in *Hudson* and

*Fussell*, there was evidence, apart from the marked police vehicles, from which

the jury could infer that the officers wore official uniforms.

First, the State points out that both Sergeant Renschler and Officer

Thomas testified they were "equipped" with body cameras, and that Officer

Thomas explained he typically activates his body camera when he exits his patrol

car.  But neither officer provided any information about their cameras.  For

example, neither officer testified about the entity that provides the cameras,

whether their cameras were a component of their department-issued police

10

uniform, how the officers typically wore the cameras, or any police department requirements related to the cameras. So, without more context, the officers' brief references to body cameras did not permit a rational trier of fact to infer beyond a reasonable doubt that the officers were "in uniform."

Second, the State points out that the jury saw video footage just after the collision showing "pursuing officers" arriving at the scene in "full uniform." But it is clear from the testimony that the officers depicted in uniform arriving at the scene of the collision were Thurston County Sheriff's Office deputies, not Sergeant Renschler and Officer Thomas, the two Olympia Police Department officers who pursued and attempted to stop the Camry. The fact that some law enforcement officers employed by a separate agency were in uniform when they arrived at the scene of the collision on May 5, 2023 does not permit a reasonable inference that the specific officers who signaled McKinlay to stop before the collision occurred were also in uniform. And again, this is true even if McKinlay likely knew that law enforcement officers were pursuing him. *See Ritts*, 94 Wn. App. at 788; *Hudson*, 85 Wn. App. at 404-05.

Because the evidence was insufficient for a rational trier of fact to find beyond a reasonable doubt all the essential elements of attempting to elude a pursuing police vehicle, we reverse and remand for the trial court to vacate that conviction.

In sum, we reverse McKinlay's two convictions for assault in the second degree of Jose and Laura and one conviction for attempting to elude a pursuing police vehicle. And we remand for the trial court to vacate those three

convictions, enter judgment on two counts of the lesser convictions for assault in the fourth degree of Jose and Laura, and resentence McKinlay.

_____, ACJ

WE CONCUR:

Díaz, J.
_____

_____