IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36035-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | OPINION PUBLISHED |
| v. | ) | IN PART |
| | ) | |
| RICHARD JOHN RICHARDSON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Richard Richardson appeals his convictions for

conspiracy to commit first degree robbery and first degree felony murder, with first

degree burglary as the felony component. We substantially agree with his argument that

an instructional error, which incorrectly defined first degree robbery, requires reversal of

that conviction. We otherwise affirm.

FACTS

In January 2015, Richardson was homeless and spending most of his time either in

a skate park or in the House of Charity in Spokane. It was at the House of Charity where

Richardson met Chris Hall, Ricky Cox, and Isaiah Freeman. Cox and Richardson shared

methamphetamine with one another. Cox also knew Damien Stewart, who sold

methamphetamine to him.

In late January, Richardson, Hall, Cox, and Freeman were at the skate park where

they all smoked methamphetamine supplied by Richardson. Afterward, Richardson

demanded reimbursement from the others. The group decided Richardson would be

repaid with drugs from someone else.

Cox sent text messages to Damien Stewart, arranging a deal to buy an "eight ball"

of methamphetamine. The deal was a set up; Cox and the others planned to enter

Stewart's apartment and take methamphetamine from him. The four men walked from

the skate park to Stewart's apartment.

As they walked, some of the men discussed their plan to rob Stewart. Richardson

overheard some of these discussions. Freeman became angry and said he was going to

hurt Stewart and that he was going to "rob [Stewart] and kill him." Report of

Proceedings (RP) at 291. Both Hall and Richardson expressed concerns, saying "[W]hat?

You're not gonna . . . no, you're not gonna do that." *Id.* The group all thought Freeman

was not serious.

The four men arrived at Stewart's apartment. Hall knocked on the door. Stewart

opened it and was mad that additional people had come over. Stewart and Hall argued

2

over this outside the apartment for a short time. During the argument, Hall hit Stewart. Freeman then pushed his way past Stewart and entered his apartment with Hall.

Richardson and Cox waited outside the apartment. During the time they were outside, they could hear loud banging noises, which Cox later described sounded as if someone was getting thrown around. A neighbor came out and asked the two men if everything was okay. They responded that everything was fine. Cox then knocked on Stewart's door. Hall answered, and Richardson and Cox entered the apartment.

When Richardson and Cox entered the apartment, Freeman was holding Stewart face down on the ground. Richardson and Cox began searching the apartment for narcotics to steal, but were unable to find any. The men asked Stewart where his drugs were, but he was unable to respond because he was slipping in and out of consciousness.

Richardson kicked Stewart in the face while Stewart was being held down by Freeman. Freeman then told Richardson and Cox to hand him various objects—"[a] frying pan, a knife, speaker boxes were involved from the stereo." RP at 305. Freeman then used the frying pan Richardson handed him to hit Stewart in an attempt to knock him out. During the assault, both Richardson and Cox helped restrain Stewart.

Following the assault, the group left the apartment. Cox took two sleeping bags of his from Stewart's apartment. Freeman took Stewart's wallet and phone. The group

3

planned on using Stewart's food stamp and money cards to obtain money with which to

buy drugs. However, they were not able to use the cards.

A neighbor found Stewart's body and contacted the police. When police arrived,

they found the apartment in disarray with dried blood around the body and bloody

footprints on the ground. They also found a bloody belt and tie, a bloody stick, and the

frying pan that had been used in the assault. One of Stewart's neighbors kept track of

vehicles arriving at Stewart's apartment. Police were able to use this information to trace

a plate to Carla Ward. During the interview with Ward, officers learned that Stewart had

given Ward an electronic benefits transfer card. The card had belonged to Hall, but was

given by Hall to Stewart in exchange for drugs. Further investigation led police to arrest

Hall, Cox, Freeman, and Richardson.

During police interrogation, Richardson initially denied ever going inside

Stewart's apartment. Detective Randy Lesser told Richardson the police had found DNA[1]

evidence linking Richardson to Stewart's apartment. The statement was a ruse, no such

evidence existed. After hearing this, Richardson told Detective Lesser he and Cox had

entered the apartment and described a version of the above events. Specifically,

Richardson admitted being in the apartment and seeing the assault, but left out

---

[1] Deoxyribonucleic acid.

incriminating details such as kicking Stewart, restraining him, and handing Freeman the frying pan.

The State charged all four men with various degrees of murder, burglary, and robbery. The State charged Richardson by amended information with first degree felony murder, with first degree burglary as the felony component, and with conspiracy to commit first degree robbery, with a deadly weapon enhancement.

Richardson moved to exclude Freeman's statements made on the way to Stewart's apartment. The trial court initially ruled the statements were testimonial and barred by the confrontation clause. The State moved for reconsideration and argued Freeman was a coconspirator with Richardson, which made the statements nontestimonial. The trial court granted the State's reconsideration motion and ruled Freeman's statements on the way to Stewart's residence were nontestimonial and were admissible.

Cox and Hall both agreed to testify against Richardson in exchange for pleading guilty to second degree murder and getting significantly reduced sentences. During the trial, both related consistent stories, describing the events as discussed above, including Freeman's statements he made on the way to Stewart's apartment.

After the parties presented their cases, the trial court instructed the jury. Instruction 15 was the court's intended instruction for first degree robbery:

> A person commits the crime of robbery when she—he or she unlawfully
> and with intent to commit theft thereof takes personal property from the
> person or in the presence of another who is the owner of the property and
> the taking was against that person's will by the use or threatened use of
> immediate force, violence or fear of injury to that person.
>       A threat to use immediate force or violence may be either expressed
> or implied. The force or fear must be used to obtain or retain possession of
> the property or to prevent or overcome resistance to the taking, in either of
> which case, the degree of force is immaterial. The taking constitutes
> robbery, even if death precedes the taking whenever the taking and a
> homicide are part of the transaction.

RP at 920-21. Richardson did not object that the instruction failed to correctly define first degree robbery.

The jury found Richardson guilty as charged. The trial court sentenced Richardson and imposed a number of legal financial obligations (LFOs) and postjudgment interest.

Richardson timely appealed.

ANALYSIS

Richardson raises several claims on appeal: (1) the trial court violated his constitutional rights by admitting Freeman's out-of-court testimonial statements, (2) instructional error lowered the State's burden of proof for first degree robbery, (3) error in calculating the offender score, and (4) error in imposing certain LFOs. In his statement of additional grounds for review, Richardson raises three additional arguments.

6

1.  FREEMAN'S OUT-OF-COURT STATEMENTS WERE NONTESTIMONIAL

Richardson contends that Freeman's out-of-court statements were testimonial. He argues the trial court, by admitting them, deprived him of his constitutional right under the confrontation clause to confront his accuser. We disagree.

The confrontation clause of the Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. CONST. amend. VI. This right protects a defendant, charged in a criminal prosecution, from defending against testimony given out of court by witnesses who are unavailable, unless the defendant had the opportunity to cross-examine the witness at another time. *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). We review allegations of confrontation clause violations de novo. *State v. Wilcoxon*, 185 Wn.2d 324, 329, 373 P.3d 224 (2016).

While the confrontation clause protects criminal defendants against testimonial statements from nontestifying defendants, nontestimonial statements are not barred under the clause. *Id.* at 334. Testimonial statements are statements acting in substitute of in-court testimony. *Id.* Affidavits, prior testimony, statements taken under police interrogation, and other pretrial statements that the declarant would reasonably expect to

be used in prosecution are all testimonial. *Id.* at 334-35. Conversely, statements made

casually to a friend or acquaintance are not testimonial. *Id.* at 335. In *Wilcoxon*, a

codefendant in a burglary case told a friend, after the burglary, that he and another man

had discussed burgling a business. *Id.* at 327. The *Wilcoxon* court held the statements

were not testimonial because they were not designed to prove past fact or substitute for

live testimony, and were not statements the codefendant would have expected to be used

in a prosecution. *Id.* at 335.

Richardson argues statements made by coconspirators are testimonial. He bases

his argument on the idea a coconspirator would reasonably believe his out-of-court

statements about planning a crime would be used in a prosecution. We disagree.

Apprehension of possible criminal charges is not the test used in determining

whether a statement is testimonial. Examples of testimonial statements discussed in

*Wilcoxon* and *Crawford* are statements made when there is a reasonable belief

prosecution is under way or will soon be under way. Affidavits, testimony, and police

interrogation are all given under circumstances leading directly to prosecution and are

given in situations where a witness will be on notice of likely prosecution. On the other

hand, statements made by a coconspirator planning a crime are not given under

circumstances where the declarant is on notice of likely prosecution.

We do not need to delve in specific line drawing here. Statements made by coconspirators in furtherance of a conspiracy are nontestimonial. *Crawford*, 541 U.S. at 56; *see also State v. Sanchez-Guillen*, 135 Wn. App. 636, 145 P.3d 406 (2006) (statements given by the defendant's mother in an attempt to arrange for the defendant to be transported out of the country to avoid arrest were nontestimonial).

The statements made in this case by Freeman were made while the group was on their way to the victim's apartment. They were part of an ongoing discussion about how they would enter Stewart's apartment and take his drugs. These statements, made by a coconspirator in furtherance of the conspiracy, are nontestimonial and are not barred by the confrontation clause.

2.     THE TRIAL COURT FAILED TO INSTRUCT ON AN ESSENTIAL ELEMENT OF THE CHARGED CRIME

    *a.*     *The trial court erred, and the error was not harmless*

Richardson contends the trial court erred by giving an instruction that failed to correctly define first degree robbery. He notes that robbery in the first degree is distinguished from robbery in the second degree in that it requires proof of one of three additional elements. Specifically, a person is guilty of first degree robbery if "(a) In the commission of a robbery or of immediate flight therefrom, he or she: (i) Is armed with a

9

deadly weapon; or (ii) Displays what appears to be a firearm or other deadly weapon; or

(iii) Inflicts bodily injury." RCW 9A.56.200(1).

The State rightly concedes the trial court erred. The State further rightly concedes

that it cannot establish harmless error. Here, although Freeman said he planned on killing

Stewart, there was evidence that the threat was merely braggadocio's street talk.

Moreover, there was evidence that Richardson was concerned by the statement. A jury

could have reasonably found there was no agreement to cause Stewart bodily injury.

> b.      *No authority supports the State's invited error argument*

The State first responds that Richardson invited the instructional error by failing to

object. It fails to cite any authority to support its argument. We presume no such

authority exists. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193

(1962).

> c.      *The error is reviewable because it involves a manifest error of constitutional magnitude*

The State next responds that Richardson is precluded from having the error

reviewed because he failed to object to the jury instruction. Generally, a party who

fails to object to a jury instruction in the trial court waives a claim of error on appeal.

RAP 2.5(a); *State v. Schaler*, 169 Wn.2d 274, 282, 236 P.3d 858 (2010). Our refusal to

review unpreserved errors encourages parties to make timely and well-stated objections

10

so the trial court has an opportunity to correct the error. *State v. Guzman Nunez*, 160 Wn. App. 150, 157, 248 P.3d 103 (2011), *aff'd*, 174 Wn.2d 707, 285 P.3d 21 (2012).

An oft-cited exception allows review of certain unpreserved errors. RAP 2.5(a)(3) allows appellate review of manifest errors affecting a constitutional right. Richardson contends the error is reviewable because the error reduced the State's burden of proof. We disagree. The court's instructions required the State to prove every element beyond a reasonable doubt.

The infirmity is not that the instruction reduced the State's burden of proof, but rather that it omitted an essential element of the crime charged. As we explained in *State v. Chino*, 117 Wn. App. 531, 538, 72 P.3d 256 (2003):

> The constitution requires the jury be instructed on all essential elements of the crime charged. [*State v. Linehan*, 147 Wn.2d 638, 653, 56 P.3d 542 (2002)]; U.S. CONST. amend. VI; CONST. art I, § 22. An instruction that omits an essential element of a crime relieves the State of its burden of proving each element of the crime beyond a reasonable doubt. *Linehan*, 147 Wn.2d at 654. Such an error is a violation of due process and harmless solely if the reviewing court is "convinced beyond a reasonable doubt any reasonable jury would reach the same result absent the error." *Id.* (citing *State v. Easter*, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996)). Because jury instructions omitting elements of the charged crime constitute a "manifest error affecting a constitutional right," this court may consider the issue for the first time on appeal. RAP 2.5(a)(3); *see State v. Eastmond*, 129 Wn.2d 497, 502, 919 P.2d 577 (1996).

We conclude that Richardson's unpreserved claim of instructional error is reviewable because the court's instruction failed to include the essential elements of the charged crime.

### d.      *Reversal and remand is the appropriate remedy*

The State further responds that the proper remedy for this error is to reverse and remand for resentencing on the lesser included offense of conspiracy to commit second degree robbery. To support this assertion, the State relies on *In re Personal Restraint of Heidari*, 174 Wn.2d 288, 274 P.3d 366 (2012). However, the State's reliance is misplaced.

In *Heidari*, the court reaffirmed the rule put in place by *State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980), that remand for resentencing on a lesser included offense is only appropriate when the jury was explicitly instructed on the lesser offense. *Heidari*, 174 Wn.2d at 293-94, 296 (Johnson, J., concurring/dissenting).

The State argues this rule applies here because the jury was instructed on all of the elements of conspiracy to commit second degree robbery. However, while the elements in the jury instructions may have been enough to prove conspiracy to commit second degree robbery, that was not a crime that was charged or put before the jury. The court in *Heidari* specifically explained that *Green* was in effect when the State pursues an "all or

12

nothing" strategy. *Heidari*, 174 Wn.2d at 294. In order to avoid this, the court suggested the State would only need to request a lesser included offense instruction at trial. *Id.* "[I]f jurors are not asked to decide the defendant's guilt or innocence on a lesser included offense, the defendant is denied the opportunity of defending against such a charge and might forgo strategies, arguments, and the presentation of evidence relative to that charge." *Id.* In this case, the State did not request a lesser included instruction, and Richardson was not afforded an opportunity to defend against that charge.

In those circumstances where double jeopardy prevents a retrial on a reversed charge, courts allow resentencing on a lesser included offense. *Heidari*, 174 Wn.2d at 291; *Green*, 94 Wn.2d at 234-35; *State v. Williams*, 199 Wn. App. 99, 111, 398 P.3d 1150 (2017); *State v. Hummel*, 196 Wn. App. 329, 358-59, 383 P.3d 592 (2016); *State v. Johnson*, 185 Wn. App. 655, 669-70, 342 P.3d 338 (2015); *State v. Scherz*, 107 Wn. App. 427, 436-37, 27 P.3d 252 (2001). But double jeopardy considerations are not in play here, and the State is free to retry the reversed conviction. Resentencing on a lesser included offense is not appropriate. We reverse Richardson's conviction for conspiracy to commit first degree robbery and remand that charge for a new trial.

Our reversal of Richardson's robbery conviction reduces his offender score and will require him to be resentenced on his murder conviction. We, therefore, decline to

address his third and fourth arguments—purported error in calculating his offender score

and error in the imposition of LFOs.

Reversed in part and remanded.

A majority of the panel having determined that only the foregoing portion of this

opinion will be printed in the Washington Appellate Reports and that the remainder

having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it

is so ordered.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW (SAG)

SAG I: POLICE DECEPTION DID NOT COERCE CONFESSION

Richardson contends police coerced a confession from him. We disagree.

A confession is inadmissible unless it is voluntary. *State v. Adams*, 138 Wn. App.

36, 46, 155 P.3d 989 (2007). The inquiry into whether a confession is voluntary is

whether, under the totality of the circumstances, the confession was coerced. *Id.* This

court looks into the tactics used by the police to determine whether they were improper as

well as the mental state of the defendant. *Id.* Actual coercion requires a showing the

defendant's will was overborne by the interrogators. *State v. Mayer*, 184 Wn.2d 548, 568

n.8, 362 P.3d 745 (2015). Here, Mr. Richardson contends the police conduct was

14

improper because they told him they had physical and deoxyribonucleic acid evidence linking him to the scene when they did not.

However, police deception alone does not rise to the level of coercive behavior. *Ortiz v. Uribe*, 671 F.3d 863, 869 (9th Cir. 2011); *see also State v. Stackhouse*, 90 Wn. App. 344, 354, 957 P.2d 218 (1998) (confession was voluntary when defendant waived his right to counsel despite police failing to inform him that his attorney was trying to contact him). There is no showing police did anything more than simply lying to Richardson and this, in and of itself, does not show his will was overborne. Thus, there was no coercion here and the confession was admissible.

SAG II:  EVIDENCE WAS SUFFICIENT TO CONVICT

Richardson contends there was insufficient evidence to convict him of first degree felony murder. We disagree.

The State's theory against Richardson was that he was an accomplice to burglary in the first degree, and in furtherance of that felony, caused the death of Stewart.

To prove a defendant is guilty of felony murder in the first degree, the State must prove, beyond a reasonable doubt,

> He or she commits or attempts to commit the crime of . . . burglary in the
> first degree . . . and in the course of or in furtherance of such crime or in
> immediate flight therefrom, he or she, or another participant, causes the
> death of a person other than one of the participants.

15

RCW 9A.32.030(1)(c).

In those circumstances where a defendant is not the only participant in the crime, it is a defense to first degree felony murder that the defendant,

> (i)  Did not commit the homicidal act or in any way solicit, request, command, importune, cause, or aid the commission thereof; and
> (ii)  Was not armed with a deadly weapon, or any instrument, article, or substance readily capable of causing death or serious physical injury; and
> (iii)  Had no reasonable grounds to believe that any other participant was armed with such a weapon, instrument, article, or substance; and
> (iv)  Had no reasonable grounds to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.

*Id.*

Richardson argues the evidence was insufficient to convict him here because there was no physical evidence proving he murdered Stewart.  He asserts he went to Stewart's apartment only to pick up a food stamp card belonging to Hall and was told it would take only 30 minutes.

In a sufficiency challenge, the inquiry is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt."  *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).  All reasonable inferences are drawn in the State's favor, and the evidence is interpreted most strongly against the defendant.  *Id.*  This court's role is not to reweigh

the evidence and substitute its judgment for that of the trier of fact. *Green*, 94 Wn.2d at 221.

Construing the evidence in the light most favorable to the State, the evidence established that Richardson accompanied the three men with a plan to enter Stewart's apartment and steal methamphetamine from him. In fact, this is substantially what happened. Once Richardson entered Stewart's apartment, the first thing he did was look for drugs. Not finding any, the group stole other items from Stewart. In furtherance of this, Freeman killed Stewart. Richardson aided in Stewart's killing by helping to restrain him and by giving Freeman a frying pan during the attack. We conclude the State presented sufficient evidence to prove the required elements of first degree felony murder beyond a reasonable doubt.

SAG III: CANNOT REVIEW INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Richardson finally contends his counsel was ineffective because he refused to contact or call certain witnesses, failed to discuss the case sufficiently with him, failed to review the evidence, and did not consult him about requesting a lesser included offense instruction. However, these arguments refer to facts outside the appellate record and this court is precluded from considering facts not in the record. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Therefore, we do not review these issues.

17

No. 36035-1-III
*State v. Richardson*

Reversed in part and remanded for further proceedings.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, J.

18