# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

STATE OF WASHINGTON,

Respondent,

v.

KYRAN JOHN LIEN,

Appellant.

No. 54146-7-II

UNPUBLISHED OPINION

MAXA, J. – Kyran Lien appeals his convictions of communication with a minor for immoral purposes and tampering with physical evidence. The convictions arose out of an undercover operation in which a Washington State Patrol (WSP) officer posing as a 13-year-old girl exchanged a series of text messages with Lien that ultimately included an explicit description of Lien having a sexual encounter with the girl. Lien also was charged with attempted second degree child rape and attempted commercial sexual abuse of a minor, but he was acquitted of those charges.

We hold that

(1) the trial court did not abuse its discretion in denying Lien's motion to dismiss all charges based on outrageous governmental conduct,

(2) the trial court did not err in admitting into evidence Lien's text messages because the Washington Privacy Act (WPA), RCW 9.73.030, is inapplicable to them,

(3) the trial court did not err in admitting the women's underwear and lotion found in Lien's vehicle because they were relevant to the charges,

(4) the trial court did not err in admitting a redacted transcript and audio recording of his interrogation without allowing him to introduce exculpatory portions of the interrogation,

(5) Lien cannot challenge on appeal the WSP officer's testimony that all of Lien's communications were about sex with a 13-year-old because he did not object in the trial court,

(6) we decline to consider Lien's argument that the trial court erred in not giving an entrapment jury instruction for the communication with a minor for immoral purposes charge because Lien did not object to the failure to give the instruction,

(7) sufficient evidence supported the conviction for communication with a minor for immoral purposes, and

(8) sufficient evidence supported the conviction for tampering with physical evidence. Accordingly, we affirm Lien's convictions of communication with a minor for immoral purposes and tampering with physical evidence.

FACTS

*Background*

The WSP initiated an undercover operation in Kitsap County. As part of this operation, WSP sergeant Carlos Rodriguez posted an ad in the Craigslist casual encounters section. 2 RP 386-87. The body of the ad read:

> I am young looking for a daddy. long hair. Looking for a guy that knows what he wants and can teach me new things. Let's have some fun. I like showers, very clean, DDF, gifts are always nice. if you don't want to hang out then go to another ad. my house is best.

Ex. 1.

On October 11, 2017, Lien responded to the Craigslist ad via email:

Hi I've been looking for a naughty younger princess. I'm in silverdale work a lot in Bremerton area. I'm 46, 6'3", 200 fit lbs, non smoker, blue eyes, great health and hygiene, nicely hung and smooth. Love getting you sexy outfits, mani pedi, you be into kinky fun, lots of role play, teasing daddy, being a naughty girl. I'm self employed so very flexible to play.

Ex. 2. WSP detective John Garden responded with an email posing as a 13-year-old girl who had run away from home and was staying with a friend, and sent pictures of two females. Garden gave Lien a number to text for the remainder of their communications.

*Text Messages Between Lien and Garden*

Lien and Garden exchanged many text messages over a period of four days. Lien sent the first text to Garden on October 11, stating, "Hi it's ky." 3 Report of Proceedings (RP) at 463. The two exchanged multiple messages for the next several hours.

The next morning (October 12), Lien initiated the conversation for the day with "Good morning. What's your day like?" 3 RP at 468. After an exchange of several texts, Lien asked to see a picture and Garden asked if Lien was "willing to donate $$ to see my face in person." 3 RP at 469. Lien noted that this was the first time she had brought up money, but stated, "I don't mind helping." 3 RP at 470. Lien asserted that he did not want a girlfriend and preferred "hooking up." 3 RP at 470.

After several more exchanges, Garden said, "I want a condom party, but you don't seem interested in that. You want to come over and fill me?" 3 RP at 471. Lien asked what a condom party was, and Garden responded, "It's sex silly." 3 RP at 472. Lien then asked for Garden's age, and Garden replied, "Did you forget . . . . My friend and I are 13." 3 RP at 472-73. Lien commented, "I thought your 13 was 18, OMG. Honestly that's scary. You look gorgeous 25 year old." 3 RP at 473.

After some exchanges about Garden going to a bar, Lien stated, "Let's take you to get your nails done tomorrow." 3 RP at 474. Garden asked Lien to call, and that was the last text message of the day.

The next morning (October 13), Lien opened the conversation with "Good morning. Sorry I missed this. I had gone upstairs to shower, laid down and fell asleep." 3 RP at 474. Garden stated, "I thought being 13 scared you off." 3 RP at 474. Lien replied with "that's scary honestly. My eyes are bad, and I thought it was an eight." 3 RP at 474. He then commented that Garden was mature and hot, and Garden replied, "How long you going to keep this hot tight ass waiting?" 3 RP at 475. Lien asked to see a picture of her rear end, and when Garden sent one Lien said, "OMG, it's perfect" and "God, that pic is great. Can hardly stand it." 3 RP at 475.

After an exchange of several more texts, Garden stated, "Come see me, baby." 3 RP at 476. Lien replied, "Let's figure this out." 3 RP at 477. Garden told Lien to hit her up tomorrow and the texts stopped for the day.

The next day (October 14), Garden initiated the conversation with a "Morning, babe" text. 3 RP at 477. Garden stated that the basement where she was sleeping was cold, and said, "A warm body on me would do nice." 3 RP at 478. Lien replied, "OMG, yes." 3 RP at 478. Garden asked Lien how he would warm her up, and Lien responded, "First you have to be wearing something sexy and enticing. You're all snugged in under the blankets in your cold room. My strong big hands start to give you a nice deep tissue massage with a nice oil." 3 RP at 478. The exchange continued with very sexually explicit texts from both Lien and Garden describing an imagined sexual encounter between Lien and the 13-year-old girl.

4

After that, Lien asked where Garden was staying and Garden directed Lien to a nearby 7-Eleven store. After Lien sent a picture of himself at that location, Garden gave an address. Lien then texted, "Something seems wrong. There's lots of vehicles there. It's making me uneasy." 3 RP at 486. Lien then texted, "Too freaked out. Seemed too sketch. Needs to be different." 3 RP at 486.

*Arrest and Charges*

At this point, officers in at least three vehicles initiated a traffic stop of Lien. As he pulled over with the police cars behind him, Lien broke his cell phone. Officers arrested Lien. Lien said that he had an idea why he was arrested – because he had been talking "naughty" to a young girl. 3 RP at 555. Lien admitted that he knew the person he was talking to was 13 and that he thought about having sex with her.

Lien consented to the officers searching his vehicle. They found a wallet, keys, a broken iPhone, some money, and six pairs of pink and black women's underwear. They also found tanning lotion in the glovebox.

While Lien was in custody, detectives conducted a lengthy interrogation of him. Lien admitted he knew the person he was texting was 13 and made other inculpatory statements. However, he also made some exculpatory statements.

The State charged Lien with attempted second degree child rape (count I), attempted commercial sexual abuse of a minor (count II), communication with a minor for immoral purposes (count III), and tampering with physical evidence (count IV).

*Pretrial Motions*

Lien moved to dismiss all charges based on outrageous government misconduct. He argued that the misconduct was instigating the alleged offenses by luring him into texting with a

5

fake girl and then overcoming his reluctance through persistent solicitations and sexual communications.

In conjunction with this motion, Lien filed supplemental argument and materials. Lien alleged:

> [A] private religiously affiliated organization, Operation Underground Railroad (OUR), improperly allied itself with the Washington Missing and Exploited Children Task Force (MECTF). MECTF, through Detective Sergeant Carlos Rodriguez, directly and repeatedly solicited donations from OUR to pay for officer overtime and meals in the Net Nanny stings. Rodriguez, in turn, was a direct beneficiary of OUR's donations, which MECTF employed to escalate its operations. As the scope of the stings grew, officers seemed to abandon standard police tactics in favor of more questionable actions-to placate OUR and guarantee additional funding.

Clerk's Papers at 156. Lien argued that the funding of WSP operations through a private religious group was unlawful and violated due process.

The trial court denied Lien's motion to dismiss. The court stated that it was viewing the evidence in the light most favorable to the State. The court distinguished *State v. Solomon*, 3 Wn. App. 2d 895, 419 P.3d 436 (2018), where the court affirmed a dismissal based on outrageous government conduct when the charges arose from a similar undercover operation. The trial court noted that the defendant in *Solomon* attempted to disengage multiple times, while Lien continued to engage even after confirming that the person he was texting was 13 years old. However, the court did not undertake a detailed analysis of the claim and did not enter findings of fact. At oral argument, neither of the parties nor the court addressed Liens' argument about the connection between the MECTF and OUR.

In his trial brief, Lien moved to exclude admission of his text messages based on the WPA, RCW 9.73.030. The trial court denied this motion.

Lien also moved to exclude admission of the women's underwear and tanning lotion found in his vehicle, arguing that the evidence was irrelevant and inadmissible under ER 403. The trial court denied this motion.

The trial court entered an in limine order prohibiting the State and its witnesses from mentioning the MECTF.

*Trial*

At trial, Garden read all the text messages he and Lien exchanged. Officers also testified about finding the women's underwear and tanning lotion in Lien's vehicle.

The State sought to introduce redacted portions of Lien's interrogation. Lien argued that additional portions of the interrogation should be admitted under exceptions to the hearsay rule and the rule of completeness. However, both parties and the trial court earlier had gone through an exhaustive line-by-line examination of the transcript, discussing which portions that Lien sought to admit should be included in the transcript provided to the jury and which should not. The court allowed some of the portions that Lien requested to be included and disallowed others. The trial court declined to reconsider its earlier rulings and allowed the State to present the redacted version of the interrogation.

In his testimony, Garden stated that he "received a detective position at the Missing and Exploited Children." 3 RP at 454-55. This testimony violated the trial court's in limine order prohibiting the State from mentioning the MECTF. Lien did not object to the testimony.

On cross-examination, the following question and answer took place:

Q. And this is kind of where the communications get a bit x-rated; is that true?

A. I feel like they're x-rated all the way through, but this is x-rated at this part. *I think it's all about sex with a 13 year old prior to this*. So to me it's all – it's not just at this point.

3 RP at 529 (emphasis added).

Lien testified at trial. He repeatedly testified that he did not believe the person he was texting was 13 years old and that he thought the person was over 18 years old. He also repeatedly testified that he was engaged in role playing. Lien stated that communicating with a 13-year-old girl the way he did would not be appropriate, and that he would not have used sexual language if he knew he was communicating with a 13-year-old.

The trial court gave entrapment jury instructions for counts I and II. But the court stated without discussion that entrapment does not apply to communicating with a minor for immoral purposes and did not give an entrapment instruction for that charge. Defense counsel responded to the trial court's ruling by stating, "That is correct. We agree with that" and "I think that is our proposed instructions." 6 RP at 1014-15. Lien did not object to the trial court's failure to give the entrapment instruction for the communication with a minor for immoral purposes charge.

The jury found Lien guilty of communication with a minor for immoral purposes and tampering with physical evidence. The jury acquitted Lien of attempted second degree child rape and attempted commercial sexual abuse of a minor.

Lien appeals his convictions.

## ANALYSIS

A.      OUTRAGEOUS GOVERNMENT CONDUCT

Lien argues that the trial court erred in denying his motion to dismiss based on outrageous government conduct. We disagree.

1.    Legal Principles

A trial court can dismiss charges against a defendant based on due process principles if the government has engaged in outrageous conduct. *See State v. Lively*, 130 Wn.2d 1, 19, 921

P.2d 1035 (1996). To support dismissal, the "conduct must be so shocking that it violates fundamental fairness." *Id.* However, the circumstances under which dismissal is appropriate are limited:

> [A] due process claim based on outrageous conduct requires more than a mere demonstration of flagrant police conduct. Public policy allows for some deceitful conduct and violation of criminal laws by the police in order to detect and eliminate criminal activity. Dismissal based on outrageous conduct is reserved for only the most egregious circumstances.

*Id.* at 20 (citations omitted).

We evaluate claims of outrageous government conduct based on the totality of the circumstances, addressing the unique set of facts in each case. *Id.* at 21. The focus is on the State's conduct, not on the defendant's predisposition to commit a crime. *Id.* at 22. The court in *Lively* identified several factors that should be considered in determining whether government conduct violates due process:

> [1] whether the police conduct instigated a crime or merely infiltrated ongoing criminal activity; [2] whether the defendant's reluctance to commit a crime was overcome by pleas of sympathy, promises of excessive profits, or persistent solicitation; [3] whether the government controls the criminal activity or simply allows for the criminal activity to occur; [4] whether the police motive was to prevent crime or protect the public; and [5] whether the government conduct itself amounted to criminal activity or conduct "repugnant to a sense of justice."

*Id.* at 22 (citations omitted) (quoting *People v. Isaacson*, 44 N.Y.2d 511, 378 N.E.2d 78, 83 (1978).

We review claims of outrageous government conduct under an abuse of discretion standard. *State v. Glant*, 13 Wn. App. 2d 356, 369, 465 P.3d 382, *review denied*, 196 Wn.2d 1021 (2020). An abuse of discretion occurs when the trial court's ruling is "manifestly unreasonable or based on untenable grounds or reasons" and when the court "adopts a view that no reasonable person would take." *Id.*

Two published Court of Appeals cases address outrageous government conduct claims relating to undercover operations similar to the one here: *Glant*, 13 Wn. App. 2d at 369-75 and *Solomon*, 3 Wn. App. 2d at 909-16.

In *Glant*, the WSP placed a vague Craigslist ad soliciting a man interested in sex with children. 13 Wn. App. 2d at 361. Glant responded, and in texting with a fictional mother of a 13-year-old boy and two girls, aged 11 and 6 expressed an interest in engaging in oral sex with the daughters. *Id.* Glant then drove from Mercer Island to Thurston County to meet the daughters, and he was arrested there. *Id.* at 361-62. After applying the *Lively* factors, the trial court denied Glant's motion to dismiss based on outrageous government conduct and entered extensive findings of fact and conclusions of law. *Id.* at 363.

This court evaluated the trial court's analysis of the *Lively* factors, in which the trial court found that (1) the first factor was neutral because although the WSP posted the Craigslist ad, it was not aimed at Glant specifically and Glant voluntarily responded; (2) the second factor favored the State because the messages as a whole showed that Glant was not reluctant to commit a crime; (3) the third factor was neutral because although WSP mentioned children young enough to trigger first degree child rape, Glant controlled which children he made sexually explicit comments about; (4) the fourth factor strongly favored the State because the WSP's overall motive was to prevent crime and to protect the public; and (5) to the extent WSP committed a crime by soliciting sex with a child, that fact did not justify dismissal because the purpose was to prevent crime against actual children. *Id.* at 372-375. The court concluded that the trial court did not err in its analysis of these factors. *Id.* at 375. And the court ultimately held that the trial court did not abuse its discretion in denying the motion to dismiss. *Id.*

In *Solomon*, law enforcement posted an ad in the Craigslist causal encounters section stating that a young woman was looking for sex with a man or a woman. 3 Wn. App. 2d at 898. Solomon responded to the ad, but said that he would not contact the person again after not hearing back. *Id.* The person then contacted Solomon four days later, but after learning that the person was only 14 years old Solomon twice stated that he was not interested. *Id.* at 899. The person continued to send Solomon explicit messages expressing an interest in a sexual encounter. *Id.* After briefly engaging in sexual conversation, Solomon again rejected the person's advances. *Id.* The trial court found that Solomon attempted to discontinue the conversation seven times, but the person persisted. *Id.* at 913-14. Solomon eventually agreed to meet the person for sex, and was arrested. *Id.* at 901.

The trial court, after considering the totality of the circumstances, granted the defendant's motion to dismiss all charges based on outrageous government conduct. *Id.* at 901, 916. The court entered extensive oral findings of fact, finding that law enforcement (1) instigated the criminal activity by posting the Craigslist ad and messaging Solomon after he discontinued contact, (2) engaged in persistent solicitation that overcame Solomon's reluctance to commit a crime, (3) controlled the criminal conduct by stringing Solomon along over four days of messages, and (4) engaged in conduct that was repugnant to a sense of justice by using graphic and sexualized language to manipulate Solomon. *Id.* at 911-15. Division One of this court affirmed, finding no abuse of discretion. *Id.* at 916.

2.   Proper Legal Standard

Lien argues that the trial court abused its discretion because it applied the wrong legal standard in addressing his motion to dismiss based on outrageous government conduct. Instead of focusing on the State's conduct, the court viewed the evidence in the light most favorable to

11

the State when determining whether the government engaged in outrageous conduct. The State does not address this issue.

There is no authority for the proposition that the trial court should view the evidence in the light most favorable to the State when evaluating an outrageous governmental conduct claim. Instead, the court in *State v. Valentine* indicated only that the trial court should resolve any factual issues relating to the claim and issue findings of fact. 132 Wn.2d 1, 23, 935 P.2d 1294 (1997).

Here, Lien based his motion to dismiss on WSP posting the Craigslist ad and subsequent communications between Garden and Lien. The content of those communications was not disputed. Therefore, the trial court's statement does not require reversal.

However, the trial court did not analyze the *Lively* factors and entered no findings of fact and conclusions of law. Instead, the court merely distinguished *Solomon* because in that case the defendant had attempted to discontinue contact seven times while Lien continued to engage even after finding out that the girl he was texting was 13 years old. Therefore, it is unclear what legal standard the trial court applied in denying the motion to dismiss.

The trial court's failure to apply the *Lively* factors also makes our review more difficult. In *Glant*, the trial court made specific rulings regarding each *Lively* factor, and this court reviewed those rulings. 13 Wn. App. 2d at 372-75. In *Solomon*, it is unclear whether the trial court expressly referenced *Lively*, but the court's extensive oral findings tracked the *Lively* factors. 3 Wn. App. 2d at 910-15. The appellate court determined that dismissal based on those findings did not constitute an abuse of discretion. *Id.* at 916. Here, there are no rulings regarding the *Lively* factors or factual findings tracking those factors for us to review to determine if the trial court abused its discretion.

In *Lively*, the defendant raised outrageous governmental conduct for the first time on appeal, so the trial court did not address the issue. 130 Wn.2d at 18-19. Nevertheless, the Supreme Court analyzed the factors it identified and concluded as a matter of law that the government's conduct was so outrageous that it constituted a due process violation. *Id.* at 22-27. We follow this approach and analyze the *Lively* factors ourself to determine if the trial court erred in denying Lien's motion to dismiss.

### 3. Analysis – *Lively Factors*

Lien argues that an analysis of the *Lively* factors shows that the charges against him should have been dismissed based on outrageous government conduct. We disagree.

#### a. Instigation of Crime

The analysis of the first *Lively* factor, instigation of the crime, is similar to that of the trial court's analysis in *Glant*. Although the WSP posted the Craigslist ad, Lien was not the target of the ad. And Lien voluntarily replied to the ad. Conversely, in *Solomon* the officer initiated contact four days after the defendant stated that he would not be communicating further. 3 Wn. App. 2d at 898-99. We conclude that the first *Lively* factor is neutral.

#### b. Overcoming Reluctance by Persistent Solicitation

Garden certainly continued to exchange text messages with Lien that suggested a sexual encounter. However, Lien's texts showed almost no hesitation when he found out that the girl he was texting was 13 years old. He commented that her age was "scary," 3 RP at 474, not because he was concerned about her age but because she was mature for her age and was hot. Lien then asked to see a picture of her rear end, and when Garden sent one Lien said, "OMG, it's perfect" and "God, that pic is great. Can hardly stand it." 3 RP at 475. Lien continued to text with Garden, culminating in the very sexually explicit exchange about how Lien planned to have sex

13

with the 13-year-old girl. This case is much different than *Solomon*, where the defendant attempted to disengage seven times and the officer continued to text him. 3 Wn. App. 2d at 913.

Lien argues that Garden solicited him for sex numerous times. But Garden's only direct mention of sex was when he said that he wanted a condom party, which meant sex. Garden did not pursue that comment further. The comment that triggered Lien's sexually explicit response was "A warm body on me would do nice." 3 RP at 478.

A review of the full text message exchange does not show that Garden overcame Lien's reluctance to commit a crime with persistent solicitation. We conclude that the second *Lively* factor does not support dismissal.

c.    Control of Criminal Activity

As in *Solomon*, the WSP controlled the criminal activity to some extent because Garden had numerous exchanges with Lien over a four-day period. But unlike in *Solomon*, Lien was an equal participant in the exchanges. Lien was the one who initiated the conversations on the second and third days. And as noted above, Lien did not disengage when he found out that the girl he was texting was only 13 years old. In fact, he commented on how hot the girl was and asked for a photo of her rear end.

Garden first mentioned sex by stating he wanted to have a condom party. Garden later made the comment "how long you going to keep this hot tight ass waiting." 3 RP at 475. And Garden initiated the graphic conversation by suggesting that she would like a body on her to warm her up. However, Lien needed little encouragement to begin explicitly telling Garden exactly how he would have sex with her.

Garden had some control over the criminal activity, but not complete control. We conclude that the third *Lively* factor is neutral.

14

d.    WSP's Motive

This court in *Glant* held that the trial court did not err in ruling that the fourth factor strongly favored the State because the WSP's overall motive in conducting its undercover operation was to prevent crime and protect the public.  13 Wn. App. at 374.  The trial court in *Solomon* made no findings regarding this factor.

Lien argues that the relationship between OUR and the MECTF created an illegal relationship.  But in *Glant* this court stated that "[s]imply because private supporters help to fund a program does not mean that that program no longer aims to protect the public or prevent crime."  13 Wn. App. 2d at 374-75.  And the court noted that RCW 13.60.110 specifically allows private funding for the purpose of catching potential sexual abusers of children.  *Id.* at 374. Further, nothing in the record indicates that OUR directed or controlled the details of the WSP operation that implicated Lien.

We conclude that the fourth *Lively* factor does not support dismissal.

e.    Repugnant to Sense of Justice

Lien argues that the WSP illegally soliciting sex with a child is repugnant to a sense of justice.  This court in *Glant* held that the trial court did not err in ruling that to the extent WSP committed a crime by soliciting sex with a child, that fact did not justify dismissal because the purpose was to prevent crime against actual children.  13 Wn. App. 2d at 375.  The trial court in *Solomon* did not address this issue.  We agree with *Glant*.  As the court stated in *Lively*, "[p]ublic policy allows for some deceitful conduct and violation of criminal laws by the police in order to detect and eliminate criminal activity."  130 Wn.2d at 20.

The trial court in *Solomon* found that law enforcement engaged in conduct that was repugnant to a sense of justice by using graphic and sexualized language to manipulate the

defendant. 3 Wn. App. at 915. There is no question that Garden used graphic and highly sexualized language in the last few messages with Lien. But unlike in *Solomon*, Garden did not use sexually explicit language earlier in the communications. And Lien used equally explicit language as he and Garden exchanged descriptions of Lien having sex with a 13-year-old girl.

We conclude that based on the totality of the communications between Garden and Lien, Garden's conduct was not repugnant to a sense of justice and therefore that the fifth *Lively* factor does not support dismissal.

4. Summary

The court in *Lively* stated that "[d]ismissal based on outrageous conduct is reserved for only the most egregious circumstances." 130 Wn.2d at 20 (citation omitted). We conclude that based on an analysis of the *Lively* factors and the totality of the circumstances, this case does not involve egregious circumstances. Accordingly, we hold that the trial court did not err in denying Lien's motion to dismiss based on outrageous government conduct.

B. ADMISSION OF LIEN'S TEXT MESSAGES

Lien argues that the trial court erred in denying his motion to exclude from evidence his text messages based on the WPA, RCW 9.73.030. We disagree.

"The WPA prohibits a person or agency from obtaining communications between individuals if (1) a private communication transmitted by a device was (2) recorded or intercepted by (3) a recording or transmittal device (4) without the consent of all parties." *Glant*, 13 Wn. App. 2d at 364; *see* RCW 9.73.030. However, a person consents to a recording by "choosing to communicate through a device in which the person knows the information will be recorded," including sending emails and text messages. *Id.* at 365. As a result, this court in *Glant* held that the WPA does not require suppression of the defendant's emails and text

messages sent to an undercover officer. *Id.* at 366. This holding is consistent with *State v. Townsend*, 147 Wn.2d 666, 676, 57 P.3d 255 (2002) and follows an earlier decision from this court, *State v. Racus*, 7 Wn. App. 2d 287, 433 P.3d 830, *review denied*, 193 Wn.2d 1014 (2019).[1]

As Lien acknowledges, *Townsend*, *Glant*, and *Racus* control here. Accordingly, we hold that the trial court did not err in denying Lien's motion to exclude his text messages.

C.      ADMISSION OF WOMEN'S UNDERWEAR AND LOTION

Lien argues that the trial court erred in admitting into evidence the women's underwear and lotion found in his vehicle because they were irrelevant and unduly prejudicial. We disagree.

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *State v. DeVincentis,* 150 Wn.2d 11, 17, 74 P.3d 119 (2003). We will reverse this ruling only when "no reasonable person would take the view adopted by the trial court." *State v. Horn*, 3 Wn. App. 2d 302, 311, 415 P.3d 1225 (2018). In other words, an abuse of discretion is present when there is a clear showing that the decision was based on manifestly unreasonable or on untenable reasons or grounds. *Id.* at 312.

Evidence is relevant if it makes the existence of a fact of consequence more or less probable than without it. ER 401; *see City of Seattle v. Lange*, 18 Wn. App. 2d 139, 162, 491 P.3d 156, *review denied,* 198 Wn.2d 1024 (2021). The threshold for admitting relevant evidence is very low; even if there is a minimal relevance, the evidence is admissible. ER 401; *State v. Briejer*, 172 Wn. App. 209, 225, 289 P.3d 698 (2012). Under ER 403, relevant evidence will be excluded if its probative value is substantially outweighed by its prejudice. But ER 403 relates

---

[1] *Townsend*, *Glant*, and *Racus* all involved undercover operations similar to the one in this case. *Townsend*, 147 Wn.2d at 670-71; *Glant*, 13 Wn. App. 2d at 360-62; *Racus*, 7 Wn. App. 2d at 291-96.

to unfair prejudice, not the fact that the evidence might prejudice the defendant's case. *Carson v. Fine*, 123 Wn.2d 206, 224, 867 P.2d 610 (1994).

Here, the trial court properly admitted the women's underwear and lotion because they were relevant to counts I and II, attempted rape of a child in the second degree and attempted commercial sexual abuse of a minor. Lien texted Garden about how he wanted the fictional girl to wear sexy outfits and talked about rubbing something on her: "First you have to be wearing something sexy and enticing . . . . My strong big hands start to give you a nice deep tissue massage with a nice oil." 3 RP at 478.

There is a logical inference from Lien and Garden's texts that the women's underwear and lotion were for their sexual encounter and that the evidence was relevant to Lien's motive for the first two counts. Lien argues that the underwear was for a woman and not a girl, and that the underwear was not sexy. But those arguments go to the weight of the evidence, not its relevance. And Lien cannot show that the evidence was unfairly prejudicial so as to outweigh its probative value under ER 403.

We hold that the trial court did not abuse its discretion in admitting into evidence the women's underwear and lotion found in Lien's vehicle.

D.      ADMISSION OF REDACTED INTERROGATION

Lien argues that the trial court violated the rule of completeness and his right to present a defense in refusing to admit his entire custodial interrogation. We disagree.

1.      Legal Principles

        a.      Rule of Completeness

ER 106 states the rule of completeness in Washington. *See State v. Roberts*, 142 Wn.2d 471, 496, 14 P.3d 713 (2000) (referring to ER 106 as the rule of completeness). ER 106

18

provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part, or any other writing or recorded statement, which ought in fairness to be considered contemporaneously with it."

A trial court only needs to admit portions of a statement which are necessary to clarify or explain the portion already received. *State v. Larry*, 108 Wn. App. 894, 910, 34 P.3d 241 (2001). The portions the defendant seeks to offer must be relevant and must " '(1) [e]xplain the admitted evidence, (2) [p]lace the admitted portion in context, (3) [a]void misleading the trier of fact, and (4) [e]nsure [a] fair and impartial understanding of the evidence.' " *Id.* (quoting *U.S. v. Haddad*, 10 F.3d 1252, 1259 (7th Cir. 1993)).

We review a trial court's ER 106 rulings for an abuse of discretion. *Larry*, 108 Wn. App. at 910.

b.    Right to Present a Defense

Both the United States Constitution and the Washington Constitution protect a criminal defendant's right to present a complete defense. *State v. Orn*, 197 Wn.2d 343, 347, 482 P.3d 913 (2021). However, a defendant's right to present a defense is not absolute. *State v. Arndt*, 194 Wn.2d 784, 812, 453 P.3d 696 (2019), *pet. for cert. filed,* No. 21-6242 (U.S. Nov. 10, 2021). That right is subject to " 'established rules of procedure and evidence.' " *State v. Lizarraga*, 191 Wn. App. 530, 553, 364 P.3d 810 (2015) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)). A defendant does not have "an unfettered right to offer [evidence] that is . . . inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988).

Our Supreme Court has developed a two-step process when addressing evidentiary rulings and the right to present a defense. *Arndt*, 194 Wn.2d at 797-98. First, the challenged

evidentiary rulings are reviewed under an abuse of discretion standard. *Id.* at 797. Second, the rulings are reviewed de novo to determine whether they violated a defendant's constitutional right to present a defense. *Id.* at 797-98. In evaluating whether the exclusion of evidence violates the defendant's constitutional right to present a defense, "the State's interest in excluding evidence must be balanced against the defendant's need for the information sought to be admitted." *Id.* at 812. Whether the defendant's evidence was excluded entirely is a significant factor in this analysis. *See id.* at 813.

2.    Analysis

Regarding the rule of completeness, both parties and the trial court went through an exhaustive line-by-line examination of the transcript of Lien's interrogation, discussing which portions that Lien sought to admit should be included in the transcript provided to the jury and which should not. The court allowed some of the portions that Lien requested to be included, and disallowed others. This undertaking involved the court's exercise of its discretion, and Lien has not explained with specificity how the trial court abused that discretion.

In addition, Lien does not identify the specific portions of the interrogation that should have been admitted under ER 106. He only argues generally that the entire interrogation should have been admitted. And Lien does not explain how *every* statement he made in the interrogation meets the rather stringent requirements of ER 106. Therefore, we are unable to properly evaluate Lien's argument.

We hold that Lien has failed to show that the trial court abused its discretion in denying Lien's request to admit additional portions of the interrogation under ER 106.

Regarding the right to present a defense, if Lien's exculpatory statements in the interrogation were not admissible under ER 106, they were inadmissible hearsay. *See State v.*

*Finch*, 137 Wn.2d 792, 824, 975 P.2d 967 (1999). In *Lizarraga*, the court held that the trial court did not violate the defendant's right to present a defense by excluding a hearsay statement. 191 Wn. App. at 558. The court emphasized that "the hearsay rule has 'long been recognized and respected by virtually every State' and 'is based on experience and grounded in the notion that untrustworthy evidence should not be presented to the triers of fact.' " *Id.* (quoting *Chambers*, 410 U.S. at 298).

Further, here Lien's interest in admitting the additional portions of the interrogation did not outweigh the State's interest in excluding inadmissible evidence. Lien was able to present some of the evidence excluded by the trial court through his own testimony, including what he said in the interrogation. For example, Lien testified that he had a hand tremor when he was nervous, that he did not think the person he was texting was 13 and he thought she was over 18, and that the women's underwear in his vehicle had nothing to do with what was going on.

We hold that the trial court did not violate Lien's right to present a defense.

E.    DETECTIVE'S OPINION OF GUILT

Lien argues that Garden improperly expressed an opinion regarding Lien's guilt when he said that all Lien's communications were about sex with a 13-year-old.[2] We decline to address this issue because Lien did not object.

Lien did not object to or move to strike Garden's statement. We generally do not consider evidentiary issues raised on appeal for the first time "because failure to object deprives the trial court of the opportunity to prevent or cure any error." RAP 2.5(a); *State v. Curtiss*, 161 Wn. App. 673, 696, 250 P.3d 496 (2011).

---

[2] Lien also assigns error to Garden's violation of the trial court's in limine order by referencing the MECTF, but he concedes that Garden's comment is harmless error. Therefore, we do not address that issue.

Lien argues that he did not need to object because Garden's statement violated the trial court's in limine order precluding witnesses giving opinions. But that rule applies only to the loser of a motion in limine; the prevailing party still must object if a witness violates an in limine order. *State v. Henson*, 11 Wn. App. 2d 97, 102, 451 P.3d 1127 (2019). Lien also argues that raising an objection would have been prejudicial to him. But Lien could have but did not raise the issue outside of the jury's presence.

We hold that because Lien did not object to Garden's statement, he is precluded from challenging the statement on appeal.

F.      ENTRAPMENT JURY INSTRUCTION

Lien argues that the trial court erred by failing to give an entrapment jury instruction for the communication with a minor for immoral purposes charge because he presented sufficient evidence to support the instruction. We decline to address this issue because Lien did not object to the failure to give this instruction.

The State argues that Lien invited any error in not giving the entrapment instruction. The State points out that the trial court stated that "[e]ntrapment applies to Count I and II only" and defense counsel replied, "That is correct. We agree with that" and "I think that is our proposed instructions." 6 RP at 1014-15. Lien responds that he was merely acknowledging the court's oral ruling, not conceding the issue.

However, following that comment Lien never objected to the trial court's failure to give an entrapment instruction for the communication with a minor for immoral purposes charge. The trial court had no notice that Lien did not agree with the court's decision not to give the instruction.

22

In general, a party who fails to object to the trial court's jury instructions waives a claim of error on appeal. *State v. Richardson*, 12 Wn. App. 2d 657, 666, 459 P.3d 330 (2020). "Our refusal to review unpreserved errors encourages parties to make timely and well-stated objections so the trial court has an opportunity to correct the error." *Id.*

Because there was no objection, we decline to consider the entrapment instruction issue.

G.      SUFFICIENCY OF EVIDENCE

Lien argues that there was insufficient evidence to sustain his convictions of communication with a minor for immoral purposes and tampering with physical evidence. We disagree.

1.      Standard of Review

The State must provide sufficient evidence to prove each element of a crime beyond a reasonable doubt in a criminal case. *State v. Jones*, 13 Wn. App. 2d 386, 398, 463 P.3d 738 (2020). The test for determining sufficiency of evidence is whether any rational trier of fact could find the elements of the charged crime beyond a reasonable doubt after viewing the evidence in a light most favorable to the State. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019), *cert. denied*, 140 S. Ct. 834 (2020). In a sufficiency of the evidence claim, the defendant admits the truth of the evidence and we view the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the State. *Id.* Circumstantial and direct evidence are equally reliable. *Id.*

Credibility claims are not subject to review and are within the purview of the trier of fact. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). We must defer to the trier of fact when it concerns issues of testimony, credibility of witnesses, and persuasiveness of the evidence. *Id.*

2.    Communication with a Minor for Immoral Purposes

Lien argues that the evidence was insufficient to support his communication with a minor for immoral purposes conviction because the evidence is clear that he was role playing and that he did not believe the person with whom he was communicating was a minor and because he did not sexualize that person.  We disagree.

A person is guilty of communication with a minor for immoral purposes if the person communicates with someone the person believes to be a minor for immoral purposes.  RCW 9.68A.090(1).  The offense is a felony if the communication with the minor is by means of electronic communication.  RCW 9.68A.090(2).

Here, Lien was told in the initial email and again later that the person he was talking to was 13 years old.  Lien understood that the person was 13 but still continued to communicate with her.  In the interview, detectives asked Lien "you understood that she was 13, not 18. Is that correct?" and Lien responded "Mm-hm."  Ex. 31A at 707.  Lien admitted in the interrogation he should have stopped talking to the person when she corrected him about her age, but he did not.

Construing the evidence in a light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that Lien knew the person he was talking to was a minor.  We hold there was sufficient evidence to support a conviction of communication with a minor for immoral purposes.

3.    Tampering with Physical Evidence

Lien argues that the evidence was insufficient to support his tampering with physical evidence conviction because there was no evidence that he had reason to believe that an "official proceeding" was about to be instituted.  We disagree.

RCW 9A.72.150(1) states that a person is guilty of tampering with physical evidence if that person destroys physical evidence without legal authority "having reason to believe that an official proceeding is pending or about to be instituted." The question here is whether Lien had reason to believe an official proceeding was about to be instituted when the police initiated the traffic stop.

Lien broke his cell phone as several police cars surrounded him. A reasonable inference from the evidence is that Lien knew that he was about to be arrested and knew that the State would charge him with a crime for sending sexually explicit texts to a 13-year-old girl. Although RCW 9A.72.150(1) does not define "official proceeding," the bringing of criminal charges that necessarily will involve the court system constitutes an official proceeding.

We conclude that a rational trier of fact could find beyond a reasonable doubt that Lien broke his cell phone because he had reason to believe that an official proceeding was about to be instituted. Therefore, we hold that there was sufficient evidence to support a conviction of tampering with physical evidence.

H.    CUMULATIVE ERROR

Lien argues that we order a new trial based on the cumulative error doctrine. Under this doctrine, the defendant must show that the combined effect of multiple errors requires a new trial. *State v. Clark*, 187 Wn.2d 641, 649, 389 P.3d 462 (2017). Here, Lien has not demonstrated that any error denied him a fair trial. Therefore, we hold that the cumulative error doctrine is inapplicable.

## CONCLUSION

We affirm Lien's convictions of communication with a minor for immoral purposes and tampering with physical evidence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

, C.J.

LEE, C.J.

GLASGOW, J.